21-CV-1738

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GUJARATI, J.
BLOOM, M.J.



DONELL HICKMAN,
    Plaintiff,

    v.

NYU LUTHERAN
NYU LANGONE HEALTH SYSTEM,
DANIEL JOSEPH PURCELL, MD and
UNKNOWN MEDICAL PERSONELL at
NYU LANGONE HEALTH SYSTEM,

    and

BELLEVUE HOSPITAL CENTER,
ATTENDING PHYSICIANS RAJNEESH GULATI, MD;
ALEXANDRA ORTEGA, MD; JULIA PARIS, MD;
MARK P. BERNSTEIN, MD; and UNKNOWN MEDICAL
PERSONELL at BELLEVUE HOSPITAL CENTER,

    and

MEDICAL STAFF and CORRECTION OFFICERS
at MDC BROOKLYN; THE FEDERAL BUREAU OF
PRISONS (B.O.P.),
                  Defendants.

Civil Action No.: _____

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 29 2021 ★

BROOKLYN OFFICE

RECEIVED
MAR 29 2021
PRO SE OFFICE

## LIBERAL CONSTRUCTION STANDARD

Comes now Donell Hickman, hereinafter referred to as Plaintiff, proceeding pro se and prays this Honorable Court apply liberal construction to the instant filing as afforded all pro se litigants. (See Haines v.Kerner, 404 U.S. 519 (1972)).

## MEMORANDUM IN SUPPORT OF 42 U.S.C. § 1983 CLAIM

Plaintiff, from the outset, explains to this Honorable Court that he is proceeding as a pro se plaintiff and reserves the right to submit relevant case law in support of his claims as raised herein and in the attached application. Plaintiff is herewith providing the facts as they relate to his claim so this Honorable Court can decide if plaintiff has a valid claim.

## RELEVANT HISTORY OF CLAIM

On December 21, 2016, while being housed at the Metropolitan Detention Center ("MDC"), plaintiff was laying on his top bunk bed in his cell.  Plaintiff blacked out/lost consciousness and fell from the top bunk to the floor.  This is about an almost six foot fall.  Plaintiff awoke to injuries to his right eye and left shoulder Specifically, his left shoulder was knocked out of its socket and his right eye was badly damaged.  Plaintiff was in excruciating pain and reported his incident and injuries to staff at MDC.  Plaintiff was sent to and seen by medical personell at MDC in the medical department.

Plaintiff was seen by medical personell at MDC and it was determined that plaintiff had serious injuries to his eye and he needed chronic medical attention that only an "outside" hospital could provide.  Plaintiff was sent to an NYU facility and after being observed by medical staff there, was ultimately sent to Bellevue Hospital Center.  At Bellevue Hospital Center, it was determined that plaintiff required surgery to prepare the damage to his left eye.

Prior to his surgery, plaintiff was observed and tests were ran on his eye to determine the extent of the damage.  Plaintiff had blurred vision in his right eye. However, even though plaintiff had blurred vision, he, nonetheless had vision.  He could actually see out of his right eye. With this blurred vision, after the tests that were ran on his eye, it was determined that plaintiff had 20/20 vision, even though it was blurred in his right eye.

Plaintiff was determined to have busted his tear duct and surgery was required to limit the tearing that was coming from his right eye.  It was concluded that a filter would be placed in during the surgery to limit the tearing that was coming from his injured eye.

Upon wading from the surgery plaintiff heard the medical students cheering on the Doctor who performed the surgery expressing how the surgeon had "saved the day." Plaintiff was unsure what the medical students were referring to.  But it was clear

-2-

and obvious that something unintended must have taken place during the surgery because the nurses were congratulating the surgeon as well on how he "saved" something.  The cheering went on for a couple of minutes followed by congratulations to the surgeon for whatever he had done to "save" whatever needed saving during plaintiff's surgery.  During this entire time plaintiff had an eye patch on his right eye that had been operated on.  Neither plaintiff, nor the surgeon could have known at that time whether or not the surgery had been a success.

During his follow up visit, plaintiff's eye patch was removed and this is when he discovered that he had absolutely no vision whatsoever in his right eye. Plaintiff immediately panicked.  Plaintiff, understandably, went berserk in the doctor's office and was restrained by officers who were there to guard him from the federal institution.  After calming down, plaintiff, with tears dripping from both his eyes due to his emotional state at that time, explained to the doctor that he was completely blind in his right eye.  The doctor, who was not the one who had performed the surgery, was a female and after plaintiff informed her of his loss of sight, began texting someone for approximately fifteen (15) minutes.  The doctor informed plaintiff that she was "confused" as to what could have gone wrong during the surgery that caused plaintiff to lose his eyesight completely.  Finally, the doctor put her phone down and told plaintiff that blood from the surgery could have possibly dried up on a nerve and that could have contributed to his vision loss.

Plaintiff knows that the officers who were assigned to escort him to the hospital from MDC Brooklyn and guard him were present during his surgery the entire time and if anything had gone wrong, or looked out of the ordinary, then they certainly observed it and are witnesses.  Also, the medical students and nurses who were present during the surgery also witnessed whatever had taken place and they are witnesses and/or willing or unwitting participants in the medical malpractice that obviously took place during plaintiff's surgery.

In January of 2017 plaintiff began filing his administrative remedies with his unit team grieving about the medical malpractice that resulted in the loss of

-3-

his vision in his right eye.  Plaintiff began by filing a BP-8 stating that
the institution (MDC), medical staff and the B.O.P. were all liable and responsible
for contributing to the loss of his vision by sending him to the medical provider
that performed the surgery that resulted in the loss of his vision.  Plaintiff
waited for more than 60 days for a response and when none was given to him, he
filed another BP-8 with the same complaint and also stating that he never received
any response to his original BP-8.  Plaintiff again waited 60 days and still never
received a response.  Finally plaintiff filed a BP-9 to the warden and explained
to him the history of his filings of the BP-8's without response.  Plaintiff never
received any response to his BP-9 from the Warden or any of the warden's
representatives.

On November 20, 2018, plaintiff filed a Tort Claim for damages/SF-95 Form
to the Northeast Regional Office but never received a response confirming their
receipt of said form.  On May 20, 2019, plaintiff sent a letter to the Northeast
Regional Office asking about the status of his SF-95 Form/Tort Claim.

Plaintiff is currently housed at the Federal Correctional Institution Hazelton
in West Virginia.  Plaintiff has sent many requests to staff memebers at MDC Brooklyn
and F.C.I. Hazelton inquiring about the status of his administrative remedies and
his Tort Claim/SF-95 filings, all to no avail.  With the exception, however, of
his Case Manager at F.C.I. Hazelton Mr. Fahey, in where Mr. Fahey instructed
plaintiff to "resubmit" his claim for damages since he "never received confirmation."
(See attached Exhibit  A ).

During mail call at F.C.I. Hazelton on or about September 16, 2020, plaintiff
received  letter/notice from Darrin  Howard, Regional Counsel, in where Mr. Howard
informed plaintiff that his office had received plaintiff's claim on March 13, 2020.
Mr. Howard informed plaintiff that his claim is being denied because he "failed to

-4-

submit your administrative claim within the time restrictions contained in the applicable statutes and federal regulations..." (See attached Exhibit_B_).

Plaintiff wrote the Regional Counsel back informing him that he (Plaintiff) had actually filed his complaint within the time restrictions and that plaintiff had filed his claim on or about November 20, 2018 and that his injuries occurred in December of 2016, therefore his claim was timely filed. Plaintiff also sent copies of his entire filings along with an affidavit attesting to the authenticity of his filings and their dates of filings, under penalty of perjury. To date, the Regional Counsel has not responded. Plaintiff could not get any copies of his filings he recently sent to the Regional Director due to the lockdowns and modified lockdown for Covid and, being that the time restriction issue was brought up, plaintiff sent the Regional Counsel his remaining copies of his administrative remedy filings and affidavit. Plaintiff does, however, have copies of his Tort Claim for damages that he filed with the Northeast Regional Director and has attached those herewith, as well as his request to staff in where he inquired about his filings and his Case Manager Mr. Fahey's instructing plaintiff to resubmit his complaint. Plaintiff also has included with this filing, his latest correspondence with the F.B.O.P.'s Northeast Regional Director's office in where plaintiff is inquiring about the status of his originally filed Tort Claim/SF-95 form. (See attached Exhibits_C_). To date, plaintiff has not received any response from the Northeast Regional Director's office.

## EQUITABLE TOLLING

Plaintiff is asking this Honorable Court to apply equitable tolling to the instant filing from the time periods between January of 2017, the date which plaintiff began his administrative remedy process, to September of 2020. From the herein above and attached, plaintiff has stated with specificity that he has

-5-

dilligently pursued his claim throughout the entire time he is seeking to be tolled.
Due to forces/circumstances outside plaintiff's control, this time period elapsed
without his filings being properly noticed, filed and handled.  Now, with no other
recourse, plaintiff is seeking redress from this Honorable Court for the damage
he suffered through medical malpractice of the named defendants.  This tolling
will guarantee plaintiff's due process rights are preserved and protected, as well
as his right to seek compensation for damages he suffered through negligence,
malpractice and indifference committed by the named defendants.

## CLAIM/ARGUMENT

As plaintiff stated herein above, he fell from his top bunk when he was housed
in MDC Brooklyn, a federal facility.  Upon falling, plaintiff injured his shoulder
and his right eye.  The right eye was damaged so severely that medical staff at the
institution were not able to provide adequate treatment at that time so they chose
to send plaintiff to an outside hospital.  Plaintiff, through the choice of the
the Federal Bureau of Prisons by way of medical and other staff at MDC Brooklyn,
chose to send plaintiff to NYULutheran/Langone Health System.  There, plaintiff was
treated/checked out by Daniel Joseph Purcell, MD, as well as other unknown medical
personel.  The decision was then made to send plaintiff to Bellevue Hospital Center.
Up to this point, Staff at MDC Brooklyn, F.B.O.P. and NYU Health System are all
responsible for plaintiff being sent to Bellevue Hospital Center which makes them
all equally liable for the resulting treatment.

While at Bellevue Hospital Center, plaintiff was treated by Attending Physicians
Rajneesh Gulati, MD; Alexandra Ortega, MD; Julia Paris, MD; Mark P. Bernstein, MD
and unknown personel at Bellevue Hospital Center it was determined by the attending
physicians that plaintiff needed surgery to repair the damage to his right eye.
Prior to the surgery, it was determined that plaintiff had 20/20 vision in "both"
eyes, but blurred vision in the injured right eye.  The surgery was performed on

-6-

plaintiff's right eye. Plaintiff suffered more severe damage after the surgery than he did from the original injury that necessitated the surgery. The damage suffered is consistent, persistent and is permanent. As a result of the surgery plaintiff lost his eyesight completely in his right eye. He is blind in his right eye after the surgery and due to the surgery. There was obvious negligence on the part of the surgeon in that plaintiff would otherwise still have his eyesight. The follow doctor even stated that she did not know what happened during the surgery, but clearly implied that something out of the ordinary had happened. She even went so far as to inform plaintiff that maybe blood had dried on the nerve. All this is indicative of the malpractice that took place during plaintiff's surgery and this result was not one of the noted or informed risks possible with this type of surgery. In short, the named defendants who worked at Bellevue Hospital Center and were responsible for plaintiff's surgery and treatment are all responsible directly and indirectly for plaintiff's loss of vision in his right eye. This has certainly led to harm, physically, emotionally and psychologically to plaintiff that is long lasting and permanent. Physically plaintiff will never recover as his vision is lost for life. Emotionally and psychologically, it is still a struggle getting used to not being able to see out of his right eye and having to look at the obvious damage and deformity of his right eye.

Defendants never attempted a corrective surgery and instead opted to proceed as if it is natural that plaintiff has lost his sight after the surgery. Plaintiff regrets the surgery to this day because if not for the surgery, at the very least he would still hae vision in his right eye, even if that vision was blurred.

During his return stay at MDC Brooklyn, plaintiff requested medical attention on many occasions to deal with his loss of sight to his eye. He requested from staff at MDC Brooklyn that he be scheduled for some form of corrective surgery, or at least an attempt at corrective surgery, but his requests were ignored and then

outright denied.  Plaintiff literally begged for the institution to get him to the hospital so that he can undergo another surgery to try and repair the damage suffered from his fall off the bunk and from the botched surgery that left him blind.  Defendants at MDC Brooklyn showed complete indifference to plaintiff's medical needs at this time by refusing him medical attention outright.

Plaintiff was also informed by defendants at Bellevue Medical Center that the surgery they had performed on him was all they were going to do in their efforts to repair the damage suffered from his fall off of his bunk and they refused to attempt to repair the damage suffered as a result of the surgery.  Defendants at Bellevue Medical Center informed plaintiff that his blindness in his right eye is permanent and that there was nothing they could do to repair it.  Plaintiff found it hard to believe that the very surgeon(s) who had performed his surgery resulting in plaintiff's loss of sight in his right eye could not repair what they had destroyed.

If not for the herein named defendants'  negligence, malpractice and medical indiference, plaintiff would not have lost his eyesight in his right eye and would not still be suffering the ramifications of defendants' acts to this day.  Plaintiff has and is continuing to suffer to this day and will continue to suffer for the rest of his life as there is no cure for blindness.

Plaintiff is a pro se complaintant and is not well versed in the complexities of the law and filing of lawsuits and therefore prays this Honorable Court interpret this claim as one that is congnizable under the proper legal authority that fits with the claim(s) raised herein.  For the record and as a reiteration, plaintiff states that if not for the medical malpractice and indifference perpetrated against plaintiff by the defendants named herein, plaintiff would still have his eyesight in his right eye and would not be suffering the the physical, emotional and psychological trauma that began after his surgery and continues to the present day and will most likely continue for the froseeable future, unless and until there is a cure for blindness.  By refusing to offer  or attempt a corrective surgery,

-8-

defendants, separately and in concert with one another, obdurately and wantonly refused to remedy plaintiff's blindness or attempt to remedy it.  The named defendants were/are acting under the color of the State of New York Law as well as federal law in their professional capacities when they were treating plaintiff and housing him under their care.  Plaintiff was deprived of various constitutional rights as evidenced by the complaint raised herein.

<u>REMEDY/RELIEF PRAYED FOR</u>

Based on the herein foregoing claims, plaintiff prays this Honorable Court order defendants, individually and collectively, to pay plaintiff $5,000,000.00 in monetary damages for the harms suffered as a result of the actions of defendants. Or that this Honorable Court proceed to discovery, motions, hearings and trial on the matter raised herein.

And/or any justice the law and this Honorable Court deem necessary under the circumstances.

Dated this 24 day of March, 2021.

I, Donell Hickman, swear under penalty of perjury by the laws of the United States of America that the herein foregoing and attached is true and correct to the best of my knowledge and belief.  (28 U.S.C. § 1746).

Respectfully Submitted,

/s/

Donell Hickman
Plaintiff    Pro Se

-9-

## AFFIDAVIT OF DONELL HICKMAN

I, Donell Hickman, being first duly sworn, depose, state and declare under penalty of perjury by the laws of the United States of America, that:

1.] I am at least eighteen (18) years of age and am of sound mind and competent to state the claims raised in the accompanying filings as well as the facts stated herein.

2.] I have first hand knowledge of all facts stated herein as well as in the attached filings.

3.] On December 21, 2016, while housed at the Metropolitan Detention Center (MDC) in Brooklyn New York, I fell from the top bunk bed and hit the floor causing me to lose consciousness.

4.] When I awoke from my fall, I realized that I had injured my shoulder and severely injured my right eye.

5.] I was taken to and seen by medical staff at MDC Brooklyn and it was determined that my injuries to my eye were so severe that I needed "outside" medical treatment/assistance.

6.] The Federal Bureau of Prisons (FBOP), by way of medical and correctional staff at MDC Brooklyn, transported me to NYU Langone Health System (NYU Lutheran) for treatment.

7.] NYU Langone Health Systems (NYU Lutheran), by way of Daniel Joseph Purcell, MD, as well as unknown medical personel, transferred me to Bellevue Hospital Center for treatment/surgery on my right eye.

8.] Bellevue Hospital Center, by way of Attending Physicians Rajneesh Gulati, MD; Alexandra Ortega, MD; Julia Paris, MD; Mark P. Bernstein, MD and unknown medical personel observed and ran tests on my right eye and it was determined that I had 20/20 vision in **both** eyes and, although my vision was blurred in my right eye, surgery was required to repair the damage suffered from the fall.

9.] Medical staff named as defendants in the attached complaint, working at Bellevue Hospital Center informed affiant/plaintiff that a "filter" would be placed in during the surgery to limit the tearing that was coming from his injured right eye.

10.] Prior to my surgery, I had vision in **both** of my eyes and upon waking from my surgery, my right eye had a patch/bandage on it. The success or failures of the operation was not known at this time.

11.] During a follow up visit at the hospital, I was in a consultation with a female doctor (name unknown) in where she removed the eye patch/bandage for the first time since my surgery. It was at that moment that it was discovered that the surgery was botched and something had gone terribly wrong because I was now blind in my right eye, the eye that the surgery was performed on.

12.⌋ Once I discovered that I was now blind in my right eye, I panicked and was needing to be restrained by the corrections officers who were in the room guarding me during my consultation.

13.⌋ The female doctor began texting someone for about fifteen (15) minutes before finally expressing to me that she didn't know what had gone wrong during my surgery, implying and confirming that something had in fact gone wrong. She stated that "maybe" the blood dried up on my nerve.

14.⌋ That I was returned to MDC Brooklyn and I requested from staff, both medical and correctional, that I be sent back to the hospital and rescheduled for some type of corrective surgery to give me back my eyesight.

15.⌋ Medical staff and correctional staff at MDC Brooklyn refused to grant my request and completely ignored my pleas for medical attention to try and restore my vision.

16.⌋ Bellevue Hospital Center and the named defendants who worked at that facility did not perform, nor ever attempt to perform any type of corrective surgery to try and repair the damage caused by the botched surgery. Named defendants in my complaint all failed or refused to provide me with not only proper, but any form of medical treatment to repair the damage to my eye caused by the surgery.

17.⌋ If not for the surgery, I would still have my vision today, albeit blurry in my right eye, but still the ability to see nonetheless.

18.⌋ That the doctor(s) who performed my surgery were negligent in the performance thereof, which constitutes medical malpractice, that resulted in the complete loss of sight in my right eye. The sight that I had before the surgery.

19.⌋ Medical and correctional staff at MDC Brooklyn, as well as medical staff at Bellevue Hospital Center who were a part of my surgery/treatment showed a complete and total disregard for my medical needs, as well as indifference to my medical needs.

20.⌋ I am suffering physical, emotional and psychological damage as a result of the medical malpractice and negligence of Bellevue Hospital Center and its named and unknown medical staff and that suffering will likely continue for the rest of my life unless a cure for blindness is discovered.

21.⌋ Named Bureau of Prisons defendants/employees disregarded and failed to consider or even acknowledge my grievances that I filed regarding my medical issues complained of in the accompanying complaint.

22.⌋ That all defendants named herein and in the attached complaint, as well as the unknown defendants, all violated my constitutional rights, namely the Eighth Amendment to the U.S. Constitution which is applicable to the states through the due process clause.

23.⌋ When the state, or in my case the federal government by way of the Bureau of Prisons, takes a person into its custody and holds them there against their will, the constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. Clearly, defendants failed and/or refused to fulfill their duty in my specific case/circumstances.

24.] The eighth amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes and that kind of punishment includes prison officials' deliberate indifference to inmates' serious medical needs.

25.] I was deprived of adequate medical care that resulted in the loss of my eyesight, and continuous physical and psychological sufferings that I will most likely never be able to heal from.

26.] I began filing my grievances with the Federal Bureau of Prisons in January of 2017.

27.] None of my grievances were ever responded to, nor were they even acknowledged.

28.] I followed proper procedures and protocol, all to no avail and that was out of my control.

29.] I filed a Tort Claim for damages/SF-95 form with the Northeast Regional Office of the Federal Bureau of Prisons and never received a response to these filings. Said Tort Claim for damages/SF-95 form was timely filed on November 20, 2018.

30.] On May 20, 2019, I filed a letter with the Northeast Regional Office inquiring about the status of my Tort Claim for damages/SF-95.

31.] I am currently housed at F.C.I. Hazelton in West Virginia.  I have sent many requests to staff here at F.C.I. Hazelton and MDC Brooklyn inquiring about the status of my administrative remedies, as well as my Tort Claim for damages/ SF-95 filings, all to no avail and with no response.

32.] My case manager here at F.C.I. Hazelton Mr. Fahey (no longer my case manager) told me to resubmit my claim.

33.] During mail call about September 16, 2020, I received a letter dated July 6, 2020, from Darrin Howard, Regional Counsel, informing me that his office received my claim on March 13, 2020 and it was being denied as untimely filed.

34.] I began and filed my administrative remedies and Tort Claim for damages/SF-95 filings, **"timely"**, but they were disregarded and not processed.  My filings began on January of 2017 and continued/continues to the present.

35.] I followed and observed all time restrictions regarding the filings of my administrative remedies, Tort Claim for damages/SF-95 as well as attempts to seek redress with the Courts but my grievances have gone unacknowledged and totally disregarded.

36.] The Administrative Remedy is unavailable when the remedy operates as a simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates; is so opaque that it becomes, practically speaking, incapable of use or, no ordinary prisoner can discern or navigate it; it allows prison administrators to thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

37.] The Civil Law generally calls a person reckless who acts or, if the person has a duty to act, fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.

38.]     A complaint is deemed ot include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Matters to which the court takes judicial notice are also not considered matters outside the pleadings. Matters the Court may take judicial notice of are, for example, documents that are publicly available and whose accuracy cannot reasonably be questioned.

39.]     The record of my medical treatment and surgery are and should be on file with defendants in their respective places of employment named herein and in the attached complaint.

40.]     All the statements and allegations made in my attached complaint and herein are all true and I swear to their authenticity under the penalty of perjury.


Dated this 24 day of March, 2021.

    I, Donell Hickman, swear under penalty of perjury by the laws of the United States of America that the herein foregoing, in its entirety, is true and correct and  not meant to be misleading.  (28 U.S.C. § 1746)

           /s/ _Donell Hickman_
            Donell Hickman
            Affiant

Page 4 of 4

## CERTIFICATE OF SERVICE

I, Donell Hickman, swear under penalty of perjury by the laws of the United States of America that I caused to be sent a true and correct copy of the herein attached, to the named defendants, by placing same in the institution's mailbox/mail system with first class postage prepaid, on March 24, 2021. Thos named defendants are the following:

NYU Lutheran
NYU Langone Health System,
Daniel Joseph Purcell, MD and
Unknown Medical Personel at
NYU Langone Health System

And

Bellevue Hospital Center,
Attending Physicians Rajneesh Gulati, MD
Alexandra Ortega, MD
Julia Paris, MD
Mark P. Bernstein, MD
And Unknown Medical Personel at
Bellevue Hospital Center

And

Medical Staff and Correction Staff/Officers
at MDC Brooklyn
The Federal Bureau of Prisons (FBOP)

I caused one packet/envelope to be served at the addresses of each facility and addressed the envelope in the same manner as the heading of the complaint due to my filing this complaint pro se and my being at a disadvantage as an inmate unable to research and investigate the exact addresses of each individual defendant to be served.

/s/ Donell Hickman

Donell Hickman
Pro Se   Plaintiff

MY EXTRA COPY 11-2018

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Federal Bureau Of Prisons C/O SF-95<br>Northeast Regional Office<br>2nd & Chesnut St. 7th Floor<br>Philadelphia, PA. 19106 | Donell Hickman # 77957-054<br>U .S .P. Cannan<br>P .O. Box 300<br>Waymart, PA. 18472 |

| 3. TYPE OF EMPLOYMENT<br>MILITARY ☐ CIVILIAN ☐ | 4. DATE OF BIRTH<br>8-15-1978 | 5. MARITAL STATUS<br>SINGLE | 6. DATE AND DAY OF ACCIDENT<br>12-22-2016 | 7. TIME (A.M.)or P.M.)<br>? ? ? ? |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

[DEFINITION:*=BOP employees and contracted employees, or contracted or medical staff named unnamed from the start of the issue / tort to the end of the issue-tort this includes the U.S. Marshals]

On 12-22-2016 I was a inmate at the Metropolitan Detention Center Brooklyn (MDC BROOKLYN) .I was housed there by the *U.S. Marshal in a *BOP facility as a detainee.

- PLEASE SEE CONTINUING PAGE TO : "8. BASE OF CLAIM"

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N / A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N / A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. [ see *BOP Medical records].

The nature and extent of my injury is : I have 100% lose of the Eyesight in my Right Eye.

[ see EXHIBITS 1, A, B and C] On 12-22-2016 I fell off the TOP BUNK and lost a EYE. Further the *BOP will not give me any follow-up care to see if my eyesight can be restored.

| 11. | WITNESSES | |
|---|---|---|
| | NAME | ADDRESS (Number, street, city, State, and Zip Code) |
| | All of the names in the Exhibits. All of the *BOP medical staff at MDC Brooklyn & the *U.S. Marshals Office assigned to it. | I don't know all of they Address other then what is found in the Exhibits.   The address of the MDC & NY Marshals are known to the regional |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (In dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| N/A | $ 5,000,000.00<br>Five Million Dollars | O | Five Million Dollars |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>HICKMAN, DONELL *Donell Hickman 11-20-18 | 13b. Phone number of signatory<br>Call the Prison | 14. DATE OF CLAIM<br>11-20-2018 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109<br>Previous editions not usable.<br>Designed using Perform Pro, WHS/DIOR, Jun 98

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2



## ONE CONTINUING PAGE FROM: "8. BASIS OF CLAIM"
==========================================================

I was assigned to a cell on the top bunk. I had over and over asked the *BOP staff to move me to the Bottom BUNK as i was to big to get on the top Bunk. I asked Medical staff for a medical pass for a bottom Bunk. I told *BOP medical staff at MDC Brooklyn that I had Fallen Off the Bunk multiple times. The Nurse told me that She could not medically move me and that neither could the PA and that the only one that could do so was the Medical Doctor. I asked to be put in to see the Doctor The nurse told me that she could not put me in to see the Doctor just because I was a big man.

On 12-22-16 I fell off of the TOP BUNK once aging. The *BOP / * U.S. Marshals rushed me to a contract medical hospital. [SEE EXHIBITS, 1, A, B, & C] These Medical Records are a part of this tort in section "8. BASES OF CLAIM" Every Person named in the papers is a party to this suite/ claim.

On 12-22-2016 I could see out of both of my eyes. Once the *BOP /* Marshals took me to there contracted medical staff/ hospital(s) I could still see out of my injured right eye. [SEE EXHIBIT-A at page 16]. I was then taken to yet a another *BOP / *U. S. Marshals medical contractor.[ SEE EXHIBITS 1, A, B  & C. ]

I was subjected to unnecessary EYE SURGERY so that the *BOP / * U.S. Marshals medical providers could bill there *BOP / * U.S. Marshals for the coast of surgery. after all I was Just an INMATE and if I lost my eye so what.

The *BOP/ *U.S. Marshals and there contracted staff owed me a duty of care and failed to give it to me causing me to louse my RIGHT EYE. I asked the *BOP to move me from the unsafe top bunk they told me they could not. I DID inform the *U.S. Marshals that I was having trouble with the TOP BUNK *they told me they could not do anything and that I had to see the MDC / *BOP medical staff.

## CONCLUSION TO "8. BASIS OF CLAIM"
====================================================

I did in inform MDC Brooklyn medical staff that I had and was falling out of the top bunk. I did in fact ask for a bottom bunk I was told by medical staff that they could not do this. I asked the nurse at sick-call if the PA could not do it I was told that only the Doctor could do it. I even asked if the Health service administrator could give me a bottom bunk. I was once aging told that only the Doctor could grant my medical request. I asked more then one medical staff only to be told that I had to see the Doctor. In short no medical staff would give me a bottom bunk even after I told them i was falling out of the bunk to to my size. I was told repeatedly by *BOP medical staff that "THEY" i.e. the *BOP MDC medical staff I was asking to give me bottom bunk did not have the power to help me.

I did in fact tell the * U.S. Marshals that I was falling out of the top bunk and that I could not get any help from *BOP medical staff. I was told that *they could not help me as it was out of there control and I had to take it up with the *BOP MDC staff.

On 12-22-2016 I fell out of the bunk and this coursed me to louse my Right eye. I believe that the *BOP *U.S. Marshals contract medical staff did in fact perform unnecessary surge on my so that they could get a pay-day from the Federal Government thus causing me to louse 100 % of the vision in my Right EYE. Further the *BOP has done no follow-up to see if my eyesight can be restored.

SO THAT I AM CLEAR IF NOT FOR THE *BOP & *U.S. MARSHALS REFUSING TO HELP ME GET A BOTTOM BUNK WHEN THEY KNEW I WAS FALLING OUT OF THE TOP BUNK THIS WOULD OF NEVER OF HAPPENED IN THE FIRST PLACE. EVERY ONEONE I ASKED TOLD ME THEY DID NOT HAVE THE AUTHORITY OR POWER TO HELP ME.

_(signature)_                    11-20-18

**BELLEVUE HOSPITAL CENTER**

**CONSULTATION REQUEST**

| | | | | |
|---|---|---|---|---|
| Date of Request: | Time: | | | |
| Name of Patient: | | Chart #: | | Service Requesting: |
| Ward/Team/Clinic | | Room #: | | Service Consulted: |

☐ INPATIENT  ☐ OUTPATIENT  ☐ EMERGENCY (1 Hr.)  ☐ URGENT (4 Hrs.)  ☐ ROUTINE (24 Hrs.)

Summary and Specific Reason for Consultation:

Current Diagnosis & Medication(s):

Signature of Physician Requesting Consultation:

Please Print Name:                    Beeper #:

**NOTE OF CONSULTANT**

Date              Time:

To whom it may concern,

Pt. Hickman, Donell must follow up
in SN-27 ophthalmology consult room Hosp. bldg
on Wed 1/4/2017 @ 9am. and 1/9/2017
@ 11am in the same room. Please call
with any questions 212-562-1790.

EX. 1

MD/ID #532937
Dr. Joyce Khandji

For SF-95

Recommendations:

Thanks!

B. Blater, MD
Staff Physician
MDC Brooklyn          10/28/16          JOYCE KHANDJI, MD

Signature of Consultant:                              Ext.

BEL-108          CHART RECORD          Please Print Name:          Beeper #:

| Inmate Name: | HICKMAN, DONELL | | | | Reg #: | 77957-054 |
|---|---|---|---|---|---|---|
| Date of Birth: | 08/15/1978 | | Sex: M | Race: BLACK | Facility: | HAF |
| Encounter Date: | 01/06/2020 09:41 | | Provider: | Adams, Emmanuel MD | Unit: | N01 |

| Date | Time | | Rate Per Minute | Provider |
|---|---|---|---|---|
| 01/06/2020 | 08:52 HAX | | 18 | Davidson, Michele CCMA |
| 12/19/2019 | 08:47 HAX | | 18 | Resh, J. CRNP |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 01/06/2020 | 08:52 HAX | 148/101 | Left Arm | Sitting | Adult-large | Davidson, Michele CCMA |
| 12/20/2019 | 10:16 HAX | 160/100 | Left Arm | Sitting | Adult-large | Hahn, C. RN |
| 12/19/2019 | 08:47 HAX | 151/94 | | | | Resh, J. CRNP |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 01/06/2020 | 08:52 HAX | 97 | Room Air | Davidson, Michele CCMA |
| 12/19/2019 | 08:47 HAX | 98 | | Resh, J. CRNP |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 01/06/2020 | 08:52 HAX | 266.0 | 120.7 | | Davidson, Michele CCMA |
| 12/19/2019 | 08:47 HAX | 272.0 | 123.4 | | Resh, J. CRNP |

**Exam:**
  **General**
    **Affect**
      Yes: Pleasant, Cooperative
      No: Irritable, Agitated, Flat
    **Appearance**
      Yes: Appears Well, Alert and Oriented x 3
  **Pulmonary**
    **Observation/Inspection**
      Yes: Within Normal Limits
      No: Coughing, severe w production green/brown mucus, Respiratory Distress, Tachypnea, Hyperventilation
    **Thorax**
      Yes: Within Normal Limits, Normal Thoracic Expansion
    **Auscultation**
      Yes: Clear to Auscultation
      No: Crackles, Rhonchi, Wheezing
  **Cardiovascular**
    **Observation**
      Yes: Within Normal Limits, Normal Rate, Regular Rhythm
      No: Tachycardia, Bradycardia
    **Auscultation**
      Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
      No: M/R/G, S3
  **Peripheral Vascular**
    **General**
      Yes: Within Normal Limits

| Inmate Name: HICKMAN, DONELL | | Reg #: 77957-054 |
| Date of Birth: 08/15/1978 | Sex: M Race: BLACK | Facility: HAF |
| Encounter Date: 01/06/2020 09:41 | Provider: Adams, Emmanuel MD | Unit: N01 |

**Exam:**

No: Varicosities, Non-Pitting Edema

**Neurologic**

**Cranial Nerves (CN)**

Yes: Within Normal Limits, CN 2-12 Intact Grossly

**ASSESSMENT:**

Blindness, one eye, normal vision other eye, H5440 - Current - *Right Eye Blindness*

Chronic kidney disease, stage 3 (moderate), N183 - Current

Essential (primary) hypertension, I10 - Current

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Losartan Tablet | 01/06/2020 09:41 | 50 mg Orally  -  daily x 365 day(s) |

Indication: Essential (primary) hypertension, Chronic kidney disease, stage 3 (moderate)

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 377411-HAX | HydroCHLOROthiazide 12.5 MG Cap | 01/06/2020 09:41 | Take one capsule (12.5 MG) by mouth each day x 365 day(s) |

Indication: Essential (primary) hypertension

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 382174-HAX | *Losartan potassium  25 MG Tab* | *01/06/2020 09:41* | *Take one tablet (25 MG) by mouth each day* |

Discontinue Type: *When Pharmacy Processes*

Discontinue Reason: *Order changed*

Indication:

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | One Time | 05/08/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-TSH | | | |
| Lab Tests - Short List-General-Hemoglobin A1C | | | |
| Lab Tests - Short List-General-PSA, Total | | | |
| Lab Tests - Short List-General-T4, Free | | | |
| Lab Tests - Short List-General-Microalbumin & Creatinine, Urine Random | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |
| Lab Tests-U-Urinalysis w/Reflex to Microscopic | | | |
| Lab Tests-C-Culture, Urine | | | |
| Lab Tests - Short List-General-Iron & TIBC (%sat) | | | |
| Lab Tests - Short List-General-Magnesium | | | |
| **Lab results requested to be notified to:** | Resh, J. CRNP | | |
| **Lab results requested to be notified to:** | Armel, Amy PA-C | | |
| Lab Tests - Short List-General-CBC w/diff | One Time | 10/30/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |

EXHIBIT A

TRULINCS 77957054 - HICKMAN, DONELL - Unit: HAF-N-A

---------------------------------------------------------------------------------------------------------

FROM: 77957054
TO: FCI Unit N
SUBJECT: ***Request to Staff*** HICKMAN, DONELL, Reg# 77957054, HAF-N-A
DATE: 02/29/2020 06:57:31 PM

To: Mr. Hanson, Unit mNAGER
Inmate Work Assignment: lp

### REQUEST TO STAFF
==============================

F R O M :     Donell Hickman, 77957-054

T O :          Mr. Hanson, N-1 Unit Manager F C I Hazelton, WV.

D A T E :     3-1-2020

S U B J E C T :    TORT CLAIM SF-95 SENT TO THE NORTHEAST REGIONAL OFFICE 11-20-2018
=====================================================================

COPIES SENT TO:    Regional Director, Northeast Regional Office
                   2nd & Chesnut St., 7th Floor Philadelphia, PA. 19106

Mr. Hanson,
    I sent a tort claim / SF-95 to the Northeast Regional  Office (N R O) on  11-20-~~20128~~ 2018. This was over a year ago.
I sent the (N R O) a letter on  May 20,2019  I still have not received a response.

    I was injured at MDC Brooklyn on 12-22-2016. I lost a eye. I finally got the medical records and that took over a year to do.
The safety Officer told me that I had to file a SF-95 within 2 years of the injury. I did that all to no avail i.e. I can't get a response
from the (N R O).

    REQUEST:  I request that you call the (N R O) and see wear my response to my 11-20-2018 filed SF-95.

        Thank You,

        Mr. Hickman.

CC: File
    (NRO)

Inmate instructed to resubmit
Since he never received confirmation
of receipt of original Tort claim.
*J. Bahes*
CSW

TRULINCS  77957054 - HICKMAN, DONELL - Unit: HAF-N-A

---------------------------------------------------------------------------------

FROM: 77957054
TO: FCI Unit N
SUBJECT: ***Request to Staff*** HICKMAN, DONELL, Reg# 77957054, HAF-N-A
DATE: 03/06/2020 07:54:52 AM

*Mailed TO Reg-Div mid-Altanti Certified mail 7014 0510 0000 4402 3144 OUT 3-8-20*

To: inmate copy
Inmate Work Assignment: lp

copy
-----HICKMAN, DONELL on 3/6/2020 7:54 AM wrote:

>

.

FOLLOW-UP TO 3-1-2020 REQUEST TO STAFF

Mr. Hanson

After talking to the AW-Keeys and some Phone calls Mr. Fahey, Case manager told me the Following;

" INMATE INSTRUCTED TO RESUBMIT SINCE HE NEVER RECEIVED CONFIRMATION OF RECEIPT OF ORIGINAL TORT CLAIM." [ OF 11-20-2018.

I will mail it Monday 3-9-2020 by certified U.S. Mail with return receipt this ways No further games can be played.

 Thank you for your help.  Mr. Hickman

copy to Regional Director
-----HICKMAN, DONELL on 2/29/2020 6:57 PM wrote:

>

.

REQUEST TO STAFF
=============================

F R O M :       Donell Hickman, 77957-054

T O :            Mr. Hanson, N-1 Unit Manager F C I Hazelton, WV.

D A T E :        3-1-2020

S U B J E C T :   TORT CLAIM SF-95 SENT TO THE NORTHEAST REGIONAL OFFICE 11-20-2018
                  ====================================================================

COPIES SENT TO:    Regional Director, Northeast Regional Office
                   2nd & Chesnut St., 7th Floor Philadelphia, PA. 19106

Mr. Hanson,
   I sent a tort claim / SF-95 to the Northeast Regional  Office (N R O) on  11-20-20128. This was over a year ago.
I sent the (N R O) a letter on  May 20,2019  I still have not received a response.

   I was injured at MDC Brooklyn on 12-22-2016. I lost a eye. I finally got the medical records and that took over a year to do.
The safety Officer told me that I had to file a SF-95 within 2 years of the injury. I did that all to no avail i.e. I can't get a response
from the (N R O).

   REQUEST: I request that you call the (N R O) and see wear my response to my 11-20-2018 filed SF-95.

   Thank You,

EXHIBIT B



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

U.S. Custom House-7th Floor
2nd & Chestnut Streets
Philadelphia, PA 19106

July 6, 2020

Mr. Donell Hickman, Reg. No. 77957-054
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV  26525

RE:  Administrative Claim No. TRT-NER-2020-05489

Dear Mr. Hickman:

This office is in receipt of your claim, received on March 13, 2020, in which you seek compensation in the amount of $5,000,000.00 for an alleged personal injury.  Specifically, you allege on December 22, 2016, you fell from the top bunk at MDC Brooklyn, resulting in the loss of one eye.  You claim staff failed to provide you with follow-up medical care to restore your eyesight.

After review, your claim has been denied because you have failed to submit your administrative claim within the time restrictions contained in the applicable statutes and federal regulations.  Pursuant to 28 U.S.C. § 2401(b), a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.

If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter.

Sincerely,

Darrin Howard
Regional Counsel

cc:  D. Edge, Warden, MDC Brooklyn

Certified Mail Receipt No. 7017 1000 0000 5403 1063

## EXHIBIT C

FROM: DONELL HICKMAN
      REG. NO. 77957-054
      F.C.I. HAZELTON
      P.O. BOX 5000
      BRUCETON MILLS, W.V. 26525

TO: F.B.O.P NORTHEAST REGIONAL OFFICE
    C/O SF-95
    2nd AND CHESTNUT STREET, 7TH FLOOR
    PHILADELPHIA, PA. 19106

RE: FEDERAL TORT CLAIM FOR INJURY FILED ON 11/20/2018.

DATE: JANUARY 8, 2021

DEAR SIR OR MADAM,
   THIS IS MY FOURTH LETTER OF INQUIRY TO
INQUIRE ABOUT THE STATUS OF MY CLAIM
FOR INJURY I FILED WITH YOUR OFFICE ON
NOVEMBER 20, 2018 FOR INJURIES I SUFFERED
ON DECEMBER 22, 2016 FOLLOWING A SURGERY
ON MY RIGHT EYE RESULTING IN THE LOSS OF
MY SIGHT IN SAID EYE.
   TO DATE I HAVE NOT RECEIVED ANY CONFIRMATION

- 1 -



Reg. No. TR53-USA



**Federal Bureau of Prisons**

**FMC Butner**
1000 Old Highway NC 75
Butner, NC 27509
919-575-3900 x5707

*** Sensitive But Unclassified ***

| | | |
|---|---|---|
| **Name** HICKMAN, DONELL | **Facility** FCI Hazelton | **Collected** 12/19/2019 09:02 |
| **Reg #** 77957-054 | **Order Unit** N01-12ZL | **Received** 12/20/2019 12:13 |
| **DOB** 08/15/1978 | **Provider** Jennifer Resh, CRNP | **Reported** 12/20/2019 14:27 |
| **Sex** M | | **LIS ID** 35319157 |

### CHEMISTRY

| Test | Result | Flag | Reference | Units |
|---|---|---|---|---|
| Sodium | 139 | | 136-145 | mmol/L |
| Potassium | 4.1 | | 3.5-5.1 | mmol/L |
| Chloride | 106 | | 98-107 | mmol/L |
| CO2 | 27 | | 21-32 | mmol/L |
| BUN | 19 | | 7-26 | mg/dL |
| Creatinine | 1.59 | H | 0.60-1.30 | mg/dL |
| eGFR (IDMS) | 48 | | | |

$48 \times 1.21 = 58.08$

GFR units measured as mL/min/1.73 m^2. If African American, multiply by 1.210. A calculated GFR <60 suggests a chronic kidney disease if found over a 3 month period.

| Test | Result | Flag | Reference | Units |
|---|---|---|---|---|
| Calcium | 9.5 | | 8.4-10.2 | mg/dL |
| Glucose | 97 | | 70-109 | mg/dL |
| AST | 16 | | 5-34 | U/L |
| ALT | 11 | | 8-55 | U/L |
| Alkaline Phosphatase | 66 | | 40-140 | U/L |
| Bilirubin, Total | 0.2 | | 0.2-1.0 | mg/dL |
| Total Protein | 6.9 | | 6.4-8.3 | g/dL |
| Albumin | 3.9 | | 3.5-5.0 | g/dL |
| Globulin | 3.0 | | | g/dL |
| Alb/Glob Ratio | 1.30 | | 1.00-2.30 | |
| Anion Gap | 6.0 | L | 9.0-19.0 | |
| BUN/Creat Ratio | 12.0 | | 5.0-30.0 | |
| Magnesium | 1.9 | | 1.6-3.0 | mg/dL |
| Cholesterol | 147 | | <200 | mg/dL |
| Triglycerides | 96 | | <150 | mg/dL |
| HDL Cholesterol | 31 | L | 40-60 | mg/dL |
| LDL Cholesterol (calc) | 96 | | <130 | mg/dL |
| Chol/HDL Ratio | 4.7 | H | 0.0-4.0 | |

### SPECIAL CHEMISTRY

| Test | Result | Flag | Reference | Units |
|---|---|---|---|---|
| T4, Free | 1.03 | | 0.70-1.80 | ng/dL |
| TSH | 1.592 | | 0.350-4.940 | uIU/mL |

### HEMATOLOGY

| Test | Result | Flag | Reference | Units |
|---|---|---|---|---|
| WBC | 7.9 | | 4.0-11.0 | K/uL |
| RBC | 5.47 | | 4.50-6.00 | M/uL |
| Hemoglobin | 14.4 | | 13.5-18.0 | g/dL |
| Hematocrit | 43.9 | | 40.0-52.0 | % |

**FLAG LEGEND**   L=Low   Li=Low Critical   H=High   Hi=High Critical   A=Abnormal   Ai=Abnormal Critical

Page 1 of 2

# A1C to Blood Glucose Conversion Table:

Use this table to see how an A1C test result correlates to average daily blood sugar. Although this is as important as the A1C is, it's not a substitute for frequent self-monitoring. Only regular blood sugar checks show you how meals, activity, medications and stress affect your blood sugar at a single moment in time, as well as over the course of a day or week.

| A1C | Glucose | A1C | Glucose | A1C | Glucose | A1C | Glucose | A1C | Glucose | A1C | Glucose |
|-----|---------|-----|---------|-----|---------|-----|---------|-----|---------|-----|---------|
| 4 | 68 | 6 | 126 | 8 | 183 | 10 | 240 | 12 | 298 | 14 | 355 |
| 4.1 | 71 | 6.1 | 128 | 8.1 | 186 | 10.1 | 243 | 12.1 | 301 | >14 | YIKES! |
| 4.2 | 74 | 6.2 | 131 | 8.2 | 189 | 10.2 | 246 | 12.2 | 303 | | |
| 4.3 | 77 | 6.3 | 134 | 8.3 | 192 | 10.3 | 249 | 12.3 | 306 | | |
| 4.4 | 80 | 6.4 | 137 | 8.4 | 194 | 10.4 | 252 | 12.4 | 309 | | |
| 4.5 | 83 | 6.5 | 140 | 8.5 | 197 | 10.5 | 255 | 12.5 | 312 | | |
| 4.6 | 85 | 6.6 | 143 | 8.6 | 200 | 10.6 | 258 | 12.6 | 315 | | |
| 4.7 | 88 | 6.7 | 146 | 8.7 | 203 | 10.7 | 260 | 12.7 | 318 | | |
| 4.8 | 91 | 6.8 | 149 | 8.8 | 206 | 10.8 | 263 | 12.8 | 321 | | |
| 4.9 | 94 | 6.9 | 151 | 8.9 | 209 | 10.9 | 266 | 12.9 | 324 | | |
| 5 | 97 | 7 | 154 | 9 | 215 | 11 | 269 | 13 | 326 | | |
| 5.1 | 100 | 7.1 | 157 | 9.1 | 215 | 11.1 | 272 | 13.1 | 329 | | |
| 5.2 | 103 | 7.2 | 160 | 9.2 | 217 | 11.2 | 275 | 13.2 | 332 | | |
| 5.3 | 105 | 7.3 | 163 | 9.3 | 220 | 11.3 | 278 | 13.3 | 335 | | |
| 5.4 | 108 | 7.4 | 166 | 9.4 | 223 | 11.4 | 281 | 13.4 | 338 | | |
| 5.5 | 111 | 7.5 | 169 | 9.5 | 226 | 11.5 | 283 | 13.5 | 341 | | |
| 5.6 | 114 | 7.6 | 171 | 9.6 | 229 | 11.6 | 286 | 13.6 | 344 | | |
| 5.7 | 117 | 7.7 | 174 | 9.7 | 235 | 11.7 | 289 | 13.7 | 347 | | |
| 5.8 | 120 | 7.8 | 177 | 9.8 | 235 | 11.8 | 295 | 13.8 | 349 | | |
| 5.9 | 123 | 7.9 | 180 | 9.9 | 237 | 11.6 | 295 | 13.9 | 352 | | |

ADA Recommended target = <7%        ACE Recommended target = <6.5%

FASTING/Before meals = 80-130 mg/dL

2 hours after meal = < 180 mg/dL



New Hanover
Regional Medical Center

Diabetes Health Plan

Reference: 2008 (Diabetes Care 31: 1473-1478)
©ECU Division of Endocrinology 7-13-09



Federal Bureau of Prisons

**FMC Butner**
1000 Old Highway NC 75
Butner, NC 27509
919-575-3900 x5707

*** Sensitive But Unclassified ***

| | | |
|---|---|---|
| **Name** HICKMAN, DONELL | **Facility** FCI Hazelton | **Collected** 12/19/2019 09:02 |
| **Reg #** 77957-054 | **Order Unit** N01-127L | **Received** 12/20/2019 12:13 |
| **DOB** 08/15/1978 | **Provider** Jennifer Resh, CRNP | **Reported** 12/20/2019 14:27 |
| **Sex** M | | **LIS ID** 853191157 |

## HEMATOLOGY

| | Result | Flag | Reference | Units |
|---|---|---|---|---|
| MCV | 80.3 | | 80.0-100.0 | fL |
| MCH | 26.4 | | 25.4-34.6 | pg |
| MCHC | 32.9 | | 31.0-37.0 | g/dL |
| RDW | 13.3 | | 11.0-15.0 | % |
| Platelet | 265 | | 150-400 | k/uL |
| MPV | 9.0 | | 7.0-11.0 | fL |
| Neutrophils # | 5.2 | | 1.5-7.1 | k/uL |
| Lymphocytes # | 1.8 | | 0.9-3.3 | k/uL |
| Monocytes # | 0.7 | | 0.3-1.1 | k/uL |
| Eosinophils # | 0.1 | | 0.0-0.7 | k/uL |
| Basophils # | 0.0 | | 0.0-0.2 | k/uL |
| Neutrophils % | 66.0 | | | % |

Therapeutic decision making should be based on absolute values, rather than percentages

| | Result | Flag | Reference | Units |
|---|---|---|---|---|
| Lymphocytes % | 22.9 | | | % |
| Monocytes % | 9.4 | | | % |
| Eosinophils % | 1.2 | | | % |
| Basophils % | 0.5 | | | % |

## HEMOGLOBIN A1C

| | Result | Flag | Reference | Units |
|---|---|---|---|---|
| Hemoglobin A1C | 5.8 | H | 4.0-5.7 | % |

4.0-5.7
5.7 - 6.4 Increased Risk
> 6.4 Diabetes
Effective 9/09/19 HA1C methodology changed from HPLC to an enzymatic measurement and the reference range changed from <5.7 to 4.0-5.7.

**FLAG LEGEND**   L=Low   Li=Low Critical   H=High   Hi=High Critical   A=Abnormal   Ai=Abnormal Critical

| | | Albuminuria categories | | |
| | | A1 | A2 | A3 |
| | | Normal to mildly increased | Moderately increased | Severely increased |
| | | <30 mg/g <br> <3 mg/mmol | 30-299 mg/g <br> 3-29 mg/mmol | ≥300 mg/g <br> ≥30 mg/mmol |
| GFR Stages | G1 | Normal or high | ≥90 | | |
| | G2 | Mildly decreased | 60-90 | | |
| | G3a | Mildly to moderately decreased | 45-59 | | |
| | G3b | Moderately to severely decreased | 30-44 | | |
| | G4 | Severely decreased | 15-29 | | |
| | G5 | Kidney failure | <15 | | |

Key to Figure:

Colors: Represents the risk for progression, morbidity and mortality by color from best to worst.

Green: Low Risk (if no other markers of kidney disease, no CKD)
Yellow: Moderately Increased Risk
Orange: High Risk
Red: Very High Risk
Deep Red: Highest Risk

## Panel 1 (Page 3 of 6)

Thu, 12 Jan 17  1406

Page 3 of 6

Bellevue Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|----------|-------------|----------------|--------------|-----|-----|
| DIS-TM3 Bed3 | Hickman,Donell | 3760350 | 3760350-2 | 38Y | M |

Attending Physician: Gulati,Rajneesh
D.O.B.: 08/15/1978

Unscheduled ED Assign Team/Location
Event Time: Tue, 27 Dec 16  2238
Status: complete

Tue, 27 Dec 16  2239   Documented by Massin Feliz, RN

Team    : AES Team 3
Location: AES - ENT/Ophtho Rm
Nurse   : Massin Feliz, RN

Unscheduled ED Assign Team/Location
Event Time: Wed, 28 Dec 16  0635
Status: complete

Wed, 28 Dec 16  0636   Documented by Massin Feliz, RN

Team    : AES Team 3
Location: AES - Suture Rm
Nurse   : Massin-Feliz, RN

Unscheduled ED Assign Team/Location
Event Time: Wed, 28 Dec 16  0746
Status: complete

Wed, 28 Dec 16  0746   Documented by Hannah Kroll, RN

Team    : AES Team 3
Location: AES - Suture Rm
Nurse   : Hannah Kroll, RN

Unscheduled ED Provider Progress-Reassessment
Event Time: Wed, 28 Dec 16  0807
Status: complete

Wed, 28 Dec 16  0807   Documented by Marjory Desulme, NP

ED Attending          : Marjory Desulme, NP
Provider              : Marjory Desulme, NP
Provider Update Note   : Pt is pending optho re eval to determine admission
                        or admit
ED Alerts             : Prisoner (Other);
Med Decision Making    : None
Suspected Sepsis       : no

9

## Panel 2 (Page 4 of 6)

Thu, 12 Jan 17  1406

Page 4 of 6

Bellevue Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|----------|-------------|----------------|--------------|-----|-----|
| DIS-TM3 Bed3 | Hickman,Donell | 3760350 | 3760350-2 | 38Y | M |

Attending Physician: Gulati,Rajneesh
D.O.B.: 08/15/1978

Unscheduled ED Provider Progress-Reassessment
Event Time: Wed, 28 Dec 16  0955
Status: complete

Wed, 28 Dec 16  1056   Documented by Marjory Desulme, NP

ED Attending          : Marjory Desulme, NP
Provider              : Marjory Desulme, NP
Provider Update Note   : As per Dr Bottini, Ophthalmology MD will review MRI
                        results and determine if pt will be admitted or
                        discharged.
ED Alerts             : Prisoner (Other);
Med Decision Making    : None
Suspected Sepsis       : no

Unscheduled ED Provider Progress-Reassessment
Event Time: Wed, 28 Dec 16  1103
Status: complete

Wed, 28 Dec 16  1108   Documented by Marjory Desulme, NP

ED Attending          : Marjory Desulme, NP
Provider              : Marjory Desulme, NP
Provider Update Note   : As per Dr Bottini, Pt will be discharged with follow
                        up appointment with ophthalmology on Jan 4th at 9am
                        and Jan 9th at 11am. Pt will be given prescription
                        for Maxitrol opthalmic ointment to be applied BID X
                        1 week, Erythromycin ophthalmic ointment BID to
                        affected lesions to be started after 1 week of
                        maxitrol ointment.
ED Alerts             : Prisoner (Other);
Med Decision Making    : None
Suspected Sepsis       : no

10

## Panel 3 (Page 5 of 6)

Thu, 12 Jan 17  1406

Page 5 of 6

Bellevue Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|----------|-------------|----------------|--------------|-----|-----|
| DIS-TM3 Bed3 | Hickman,Donell | 3760350 | 3760350-2 | 38Y | M |

Attending Physician: Gulati,Rajneesh
D.O.B.: 08/15/1978

Unscheduled ED MD Disposition Note/Order (ED MD Disposition Note)
Event Time: Wed, 28 Dec 16  1112
Status: complete

Wed, 28 Dec 16  1115   Documented by Marjory Desulme, NP

ED Attending          : Marjory Desulme, NP
Provider              : Marjory Desulme, NP
Disposition           : Discharged to Home or Self Care
Disposition Date/Time  : Wed, 28 Dec 2016  1112
Primary Dx            : Blindness, right eye, normal
                        vision left eye
Secondary Dx(s)        : none
Procedure(s)          : No procedures performed
Discharge Rx          : Maxitrol Ophthalmic ointment apply
                        to affected lesions BID X 7 days,
                        and Erythromycin ophthalmic ointment
                        BID apply to affected lesions X 7
                        days after completion of maxitrol.
                        Medication Reconciliation Complete.
Focused Med Rec        : No changes to current medications.
Condition             : Stable
Discharge Center?     : -
HIV Test Results       : no hiv test at this visit
Follow Up             : Please follow up with ophthalmology
                        clinic on 1/4/7 at 9am and
                        Ophthalmology clinic 1/9/17 at 11am
DC Report Language     : English
Whiteboard Display     : Patient in ED. Keep/Add back on
                        Whiteboard.
Instructions for RN    : Please provide discharge paperwork
Med Decision Making    : I have reviewed the patient's
                        history through internal records or
                        an outside referral.
Tests Reviewed         : I have reviewed all labs, ancillary
                        testing, and radiology resulted for
                        this patient prior to disposition.

11

## Panel 4 (Page 6 of 6)

Thu, 12 Jan 17  1406

Page 6 of 6

Bellevue Hospital Center
Chart Review Print

| Location | Patient Name | Patient Number | Visit Number | Age | Sex |
|----------|-------------|----------------|--------------|-----|-----|
| DIS-TM3 Bed3 | Hickman,Donell | 3760350 | 3760350-2 | 38Y | M |

Attending Physician: Gulati,Rajneesh
D.O.B.: 08/15/1978

Unscheduled ED RN Discharge
Event Time: Wed, 28 Dec 16  1141
Status: complete

Wed, 28 Dec 16  1142   Documented by Hannah Kroll, RN

Preferred Language        : English
Communication Ability     : Able to communicate
Language Used             : English
Pain Screen               : no change from last pain screen
Provider Disposition      : Discharged to Home or Self Care
Provider Diagnosis        : Blindness, right eye, normal vision left
                            eye
Provider's DC Handoff to RN : Please provide discharge papaerwork
Exit Accompanied By       : DOC
Ambulatory Status         : Ambulatory
DC/Transfer To            : DOC custody
Follow Up                 : Bellevue clinic: Eye clinic
Prescriptions Given       : Yes, to patient
DC Assessment             : No medical devices
Whiteboard Display        : Patient left ED. Remove from all Whiteboards.
Vision Status             : normal vision

Patient Exit
Event Time: Wed, 28 Dec 16  1142
Status: complete

Wed, 28 Dec 16  1345   Documented by

* * * End of Report * * *

12

28 Dec 16  1115                                                                  Page 1 of 2
Patient Discharge Report
Bellevue Hospital Center Emergency Department
462 First Avenue, New York, NY 10016

77957-054
Dos: 8-15-78

Patient Name: Hickman,Donell                          Date & Time: Wed 12/28/2016 11:12
MRN: 3760050

Attending Physician: Marjory Desulme, NP
Emergency Provider: Marjory Desulme, NP                B. Bichu, MD
Diagnosis: Blindness, right eye, normal vision left eye    Staff Physician
Disposition: Discharged to Home or Self Care          MDC Brooklyn   (12/28/16)

Tests Performed: Orbits CT* w/o con Not Prtcl, Orbits MRI* w/o w/ con Not Prtcl NA Adult, Brain
MRI* w/o w/ con Not Prtcl NA Adult
Procedure(s): No procedures performed

Discharge Instructions:

Return to the Emergency Department if you think there may be a serious threat to your health.
These problems vary depending on your underlying condition, but include such problems as high
fever, severe pain, shortness of breath, persistent vomiting, excessive diarrhea, heavy bleeding,
black stools, seizure/convulsion, or change in behavior. Ask your doctor or nurse to inform you
of any problems that may be more specific to your visit today.
Additional Instructions from your Provider:

Prescriptions provided by the Emergency Department:

| Medication | Dose | Frequency |
|---|---|---|
| Erythromycin Ophthalmic Ointment 5 MG/GM | *1 a small amount into affected eye as directed | *twice a day for 7 days |
| Maxitrol Ophthalmic Ointment 3.5-10000-0.1 | *1 a small amount into both eyes | *twice a day for 7 days |

Follow Up Timeframe: Please follow up with ophthalmology clinic on 1/4/7 at 9am and
Ophthalmology clinic 1/9/17 at 11am

Your Emergency Department Provider would like you to follow up with your Primary Care
Provider (your "Regular Doctor"). If you don't have a Primary Care Provider, we can assist
you in finding one near your home. Please see the next page for a list of clinics to find
one in your area. If you are an active clinic patient at Bellevue (seen in clinic within the
past 18 months) please contact your clinic directly or call 212-562-5555 for an appointment.

Please note that Bellevue Hospital Center does not accept all insurance plans. You can
contact your health insurance provider to verify your coverage or contact the Managed
Care office at 1-800-505-5678. If you are without health insurance, you may qualify for
HHC Options. Please call 212-562-3000 to discuss HHC Options or visit:
http://www.nyc.gov/html/hhc/html/access/hhc_options.shtml.

The results of x-rays, ultrasounds, blood tests and EKGs are preliminary at this time.
They will be reviewed by a specialist, usually within 24 hours. Should it be necessary,
you will be contacted. Notify your primary care physician if you had such tests done

13

28 Dec 16  1115                                                                  Page 2 of 2
Patient Discharge Report
Bellevue Hospital Center Emergency Department
462 First Avenue, New York, NY 10016

Patient Name: Hickman,Donell                          Date & Time: Wed 12/28/2016 11:12
MRN: 3760050

during your emergency visit.

It is mandatory that you have notified the physicians and nurses of all of your past
medical and surgical history as well as any medications (including over-the-counter and
herbal preparations) that you are currently taking. Continue taking any previously
prescribed medications, in addition to any new ones from today, unless otherwise informed.

The emergency examination and treatment you received today is not intended to provide you
with a complete medical workup. You should follow up with a physician for further
evaluation and treatment, and notify your physician of any new or remaining problems. If
you have any questions or concerns regarding your treatment today, please call or return
to the Emergency Department. Otherwise, follow the instructions provided. Please read any
printed educational materials that we may have provided specific to your condition.

If your symptoms are not improving, or begin worsening, contact your primary doctor. If
you believe it is an emergency, please return to this or any other Emergency Department
or call 911. If you have any questions, feel free to ask your doctor or nurse before you
leave.

| Patient/ Parent/ Guardian Signature | Clinician Signature |
|---|---|
| I have received these instructions and had my questions answered.  I also certify that my address, phone number and/or emergency contact information that I provided is accurate. | I have reviewed these instructions with the patient. |

14

New York City Health and Hospital Corporation Clinics

**Manhattan:**
Gouverneur Healthcare Services          227 Madison St. New York, NY 10002
  212-238-7897                          Services: A, P, W
Judson Health Center                    34 Spring St. New York, NY 10012
  212-238-7897                          Services: A, P, W, D, F, O
Smith Communicare Health Center         60 Madison St. New York, NY 10038
  212-238-7897                          Services: A, P
Roberto Clemente / Sylvia Del Villard   540 E. 13th St. New York, NY 10009
  212-238-7897                          Services: A, P, B
Baruch Houses                           280 Delancey St. New York, NY 10029
  212-238-7897                          Services: A, P, W
La Clinica Del Barrio                   413 E. 120th St. New York, NY 10035
  212-432-7000                          Services: A, P, L, W
Sydenham Health Center                  215 W. 125th St. New York, NY 10027
  212-932-6500                          Services: A, P, W
Drew Hamilton Houses                    2698 8th Ave. New York, NY 10039
  212-939-8950                          Services: A, P, W
Grant Houses                            3170 Broadway, New York, NY 10027
  212-678-2420                          Services: A, P, W, F
Lenox Avenue                            115 W. 116th St. New York, NY 10026
  212-678-8420                          Services: A, P, W
La Clinical de Las Americas             175 Nagle Ave. New York, NY 10034
  212-544-2001                          Services: A, P, W

**Staten Island:**
Mariner's Harbor Houses CHC             142 Brabant St. Staten Island, NY 10303
  718-761-2060                          Services: A, P
Stapleton CHC                           111 Canal St. Staten Island, NY 10304
  718-390-0712                          Services: A, P

**The Bronx:**
Segundo Ruiz Belvis                     545 E. 142nd St. Bronx, NY 10454
  718-579-4000 (ext. 4017 Peds;         Services: A, P, W, D*, F, O*
  ext. 1800 Adult)
Morrisania                              1225 Gerard Ave. Bronx, NY 10452
  718-960-2616                          Services: A, P, F, D
The Health Center at Tremont            1826 Arthur Ave. Bronx, NY 10457
  718-918-5700                          Services: A, P
Gunhill                                 1012 E. Gunhill Rd. Bronx, NY 10469
  718-918-5700                          Services: A, P

**Brooklyn:**
KCH Fifth Avenue                        503 Fifth Ave. 2nd Fl, Brooklyn, NY
  718-768-4081 / 0439 / 7284            11215
                                        Services: W
Bushwick Health Center                  1420 Bushwick Ave. Brooklyn, NY 11207
  718-388-5889                          Services: A, P
Greenpoint Community Health Center      875 Manhattan Ave. Brooklyn, NY 11222
  718-388-5889                          Services: A, P
Cumberland                              100 N. Portland Ave. Brooklyn, NY 11205
  718-388-5889                          Services: A, P
Ida G. Israel Community Health Center   2201 Neptune Ave. Brooklyn, NY 11224
  718-946-3400                          Services: A, P, W, L, M, E, N

**Queens:**
Women's Medical Center- Lefrak          59-17 Junction Blvd. Corona, NY 11368
  718-334-2424                          Services: A, W

15

Ridgewood Medical Center                769 Onderdonk Ave. Ridgewood, NY 11385
  718-334-2424                          Services: A, P
South Queens Multi-Service Center       114-02 Guy R. Brewer Blvd. Jamaica, NY
  718-334-2424                          11434
                                        Services: A, P, W, G
QHN Medical Center (Parsons Blvd)       90-37 Parsons Blvd. Jamaica, NY 11432
  718-334-2424                          Services: A, P, W, R
QHN Medical Center (Springfield Blvd)   134-64 Springfield Blvd. Springfield
  718-334-2424                          Gardens, NY 11413
                                        Services: A, P, W

Services Key:
A = Adult Medicine / Primary Care       M= Dermatology
B= Behavioral Health                    N= Neurology
D = Dentistry (D*= Peds Dentistry only) O= Ophthalmology (O*= Optometry
E= Endocrinology                          only)
F= Podiatry                             P = Pediatric Medicine / Primary
G= Geriatrics                             care
L= Allergy / Asthma                     R= Breast Practice
                                        W = Women's Health- OB/GYN

B. Bichu, MD
Staff Physician
MDC Brooklyn  (12/28/16)

16 of 16



FX. C

For SF-95

11 / 00 / 2018

page 1 of 1



---

**Thu, 12 Jan 17  1403**

Page 1 of 1

Bellevue Hospital Center
Chart Review Print

Location    Patient Name             Patient Number   Visit Number    Age   Sex
DIS-TM3 Bed3  Hickman,Donell          3760350          3760350-2       38Y   M

Reg No. 77957-054

Attending Physician                  D.O.B.
Gulati,Rajneesh                      08/15/1978

---

Admit as

Tue, 27 Dec 16  1840   Documented by
------------------------------------------------------   Status: complete
Change of Service
Event Time: Tue, 27 Dec 16  1918
                                                         Status: complete
Tue, 27 Dec 16  1918   Documented by Alexandra Ortego, MD

Attending Physician    : Alexandra Ortego, MD
Preceptor              : Rajneesh Gulati, MD
Medical Service        : Emergency
------------------------------------------------------
Change of Service
Event Time: Tue, 27 Dec 16  2003
                                                         Status: complete
Tue, 27 Dec 16  2003   Documented by Julia Paris, MD

Attending Physician    : Julia Paris, MD
Preceptor              : Rajneesh Gulati, MD
Medical Service        : Emergency
------------------------------------------------------
Change of Service
Event Time: Wed, 28 Dec 16  0051
                                                         Status: complete
Wed, 28 Dec 16  0051   Documented by Matthew McCarty, MD

Attending Physician    : Matthew McCarty, MD
Preceptor              : Rajneesh Gulati, MD
Medical Service        : Emergency
------------------------------------------------------

* * * End of Report * * *

EX - B
FOR SF-95
PAGE 14 OF 16
11/20/2018

---

**12 Jan 17  1403**

Page 1 of 2

Bellevue Hospital Center
462 First Avenue, New York, NY  10016
Radiology Department

Patient: Hickman,Donell       MRN-V#: 3760350-2   DOB: 08/15/78 Age: 38Y  Sex: M

Location: 000 - Adult ER

DOS: 28 Dec 16  0318
Brain MRI* w/o and w/ contrast

CLINICAL INDICATION: new NLP VA OD s/p trauma 12/22/16

Technique: Multiplanar multi-sequence MR images of the brain and orbits were
obtained before and after the intravenous administration of 20 cc of Magnevist.

Comparison: Correlation with CT orbits of 12/27/2016

Findings:
There is redemonstration of a fracture of the right lamina papyracea, with
orbital fat herniating into the ethmoid air cells and inferiorly into the right
nasal cavity. There is extensive abnormal STIR hyperintensity throughout the
right intraconal and extraconal fat, most compatible with edema and/or
hemorrhage. The right medial rectus muscle is partially herniated into the
ethmoid air cells. The right optic nerve sheath complex and the right inferior
rectus muscle are deviated towards the defect in the medial orbital wall. Both
the right medial and inferior rectus muscles demonstrate increased STIR
hyperintensity and hyperenhancement. The right optic nerve appears attenuated
compared with the left, with areas of asymmetric FLAIR hyperintensity and
hypoenhancement, which may reflect traumatic optic neuropathy. There is right
proptosis. The right globe and lens are intact, although gaze is discordant.
There is right periorbital soft tissue swelling. The left orbital wall and
contents are intact.

The ventricular system is of normal configuration. There is no mass effect,
midline shift or intracranial hemorrhage. There is no abnormal intrinsic signal.

There is no abnormal parenchymal or leptomeningeal contrast enhancement. There
are no extra axial collections. Normal flow voids of intracranial vessels are
seen on spin echo imaging. There is no evidence of a diffusion abnormality to
suggest acute or subacute infarction. Scattered areas of mucosal thickening of
the visualized paranasal sinuses. Layering fluid in the right maxillary sinus
likely hemorrhage.

Impression:
Redemonstration of a right lamina papyracea fracture with orbital fat herniating

into the ethmoid air cells and right nasal cavity. Extensive abnormal STIR

2

---

hyperintensity in the right retrobulbar fat likely related to edema and/or
hemorrhage. The right medial rectus muscle is partially herniated into the

Read By: Jessica Hu, MD               Verified By: Jessica Hu, MD
Date:

12 Jan 17  1403
                                              Page 2 of 2
Bellevue Hospital Center
462 First Avenue, New York, NY  10016
Radiology Department

Patient: Hickman,Donell       MRN-V#: 3760350-2   DOB: 08/15/78 Age: 38Y  Sex: M

Location: 000 - Adult ER

DOS: 28 Dec 16  0318
Brain MRI* w/o and w/ contrast

ethmoid air cells, and the right optic nerve sheath and inferior rectus muscle
are deviated towards the defect in the right the orbital wall. Right medial and
inferior rectus muscles demonstrate asymmetric hyperintensity and
hyperenhancement. The right optic nerve is asymmetrically attenuated with areas
of FLAIR hyperintensity and hypointense enhancement concerning for traumatic
optic neuropathy. Right proptosis. Right periorbital soft tissue swelling.

No acute intracranial abnormality.

Final report dictated by  and signed by Jessica Hu, MD,  12/28/2016 7:30 AM

3

---

**12 Jan 17  1404**

Page 1 of 2

Bellevue Hospital Center
462 First Avenue, New York, NY  10016
Radiology Department

Patient: Hickman,Donell       MRN-V#: 3760350-2   DOB: 08/15/78 Age: 38Y  Sex: M

Location: 000 - Adult ER

DOS: 28 Dec 16  0318
Orbits MRI* w/o and w/ contrast

CLINICAL INDICATION: new NLP VA OD s/p trauma 12/22/16

Technique: Multiplanar multi-sequence MR images of the brain and orbits were
obtained before and after the intravenous administration of 20 cc of Magnevist.

Comparison: Correlation with CT orbits of 12/27/2016

Findings:
There is redemonstration of a fracture of the right lamina papyracea, with
orbital fat herniating into the ethmoid air cells and inferiorly into the right
nasal cavity. There is extensive abnormal STIR hyperintensity throughout the
right intraconal and extraconal fat, most compatible with edema and/or
hemorrhage. The right medial rectus muscle is partially herniated into the
ethmoid air cells. The right optic nerve sheath complex and the right inferior
rectus muscle are deviated towards the defect in the medial orbital wall. Both
the right medial and inferior rectus muscles demonstrate increased STIR
hyperintensity and hyperenhancement. The right optic nerve appears attenuated
compared with the left, with areas of asymmetric FLAIR hyperintensity and
hypoenhancement, which may reflect traumatic optic neuropathy. There is right
proptosis. The right globe and lens are intact, although gaze is discordant.
There is right periorbital soft tissue swelling. The left orbital wall and
contents are intact.

The ventricular system is of normal configuration. There is no mass effect,
midline shift or intracranial hemorrhage. There is no abnormal intrinsic signal.

There is no abnormal parenchymal or leptomeningeal contrast enhancement. There
are no extra axial collections. Normal flow voids of intracranial vessels are
seen on spin echo imaging. There is no evidence of a diffusion abnormality to
suggest acute or subacute infarction. Scattered areas of mucosal thickening of
the visualized paranasal sinuses. Layering fluid in the right maxillary sinus
likely hemorrhage.

Impression:
Redemonstration of a right lamina papyracea fracture with orbital fat herniating

into the ethmoid air cells and right nasal cavity. Extensive abnormal STIR

4

hyperintensity in the right retrobulbar fat likely related to edema and/or hemorrhage. The right medial rectus muscle is partially herniated into the

Read By:  Jessica Hu, MD                    Verified By: Jessica Hu, MD
Date:      12/28/2016

12 Jan 17  1404                                                    Page 2 of 2
                          Bellevue Hospital Center
                    462 First Avenue, New York, NY  10016
                            Radiology Department

Patient: Hickman,Donell      MRN-V#: 3760350-2   DOB: 08/15/78 Age: 38Y  Sex: M

Location: 000 - Adult ER

DOS: 28 Dec 16  0318
Orbits MRI* w/o and w/ contrast

ethmoid air cells, and the right optic nerve sheath and inferior rectus muscle
are deviated towards the defect in the right the orbital wall. Right medial and
inferior rectus muscles demonstrate asymmetric hyperintensity and
hyperenhancement. The right optic nerve is asymmetrically attenuated with areas
of FLAIR hyperintensity and hypointense enhancement concerning for traumatic
optic neuropathy. Right proptosis. Right periorbital soft tissue swelling.

No acute intracranial abnormality.

Final report dictated by   and signed by Jessica Hu, MD,  12/28/2016 7:30 AM

5

---

12 Jan 17  1404                                                    Page 1 of 1
                          Bellevue Hospital Center
                    462 First Avenue, New York, NY  10016
                            Radiology Department

Patient: Hickman,Donell      MRN-V#: 3760350-2   DOB: 08/15/78 Age: 38Y  Sex: M

Location: 000 - Adult ER

DOS: 27 Dec 16  2330
Orbits CT* w/o contrast

Indication: Recent trauma with medial canthal ligament repair. Patient now has
no light perception.

Technique: Routine noncontrast multidetector CT of the orbits with sagittal and
coronal reformations.

FINDINGS/IMPRESSION:
Comminuted right medial orbital wall fractures persist with extension through
the medial aspect of the orbital floor with herniation of intraorbital fat
through the defect. Proptosis remains. There is mild retro-orbital stranding and

thickening at the optic nerve insertion raising concern for traumatic optic
neuropathy. Left globe and lens are intact. No additional injuries are seen.

Final report dictated by   and signed by Mark Bernstein, MD,  12/27/2016 11:55
PM

Read By: Mark P Bernstein, MD        Verified By: Mark P Bernstein, MD
Date:     12/27/2016

6

---

Thu, 12 Jan 17  1406                                              Page 1 of 6
                          Bellevue Hospital Center
                            Chart Review Print

Location         Patient Name
DIS-TM3 Bed3     Hickman,Donell        Patient Number  Visit Number  Age  Sex
                                       3760350         3760350-2     38Y  M

                                       Attending Physician           D.O.B.
                                       Gulati,Rajneesh                08/15/1978

Unscheduled ED Triage Note
Event Time: Tue, 27 Dec 16  1849                        Status: complete

Tue, 27 Dec 16  1853  Documented by Juliana Bello, RN

Life Saving                : Complete Full Triage Note
Communication Method       : Direct Communication in English
Restraints                 : Patient brought in to ED in handcuffs.
Mode of Arrival            : police agency
Chief Complaint            : missed optho clinic appointment ,
Pre-Hospital Tx            : None
Assessment                 : awake, alert, dressing to R eye, here to follow
                             up with optho, missed optho appointment today
(Clinic Past Med/Surg Hx)  : See hpi
Past Medical/Surgical Hx   : Depression
Allergies - Medications    : no known drug allergies
Allergies - Other          : no known allergens
Visual Status              : normal vision
Domestic Violence          : Domestic Violence: no
Psych Risk Assessment      : None indicated at this time
ED Alerts                  : Prisoner (Other);
Blood Pressure             : 138/95
Pulse                      : 95
Respirations               : 18
Temperature                : 98.1 F (36.7 C)
Temperature Method         : Tympanic
O2 Saturation              : 100 %
Suspected Infection?       : no
Alteration of Mental Status: no
Pain Screen                : pt denies pain at this time
ESI Level                  : 4
Team Assigned              : AES Team B
Suspected Sepsis           : no
Blood/Body Fluid Exposure? : no

7

---

Thu, 12 Jan 17  1406                                              Page 2 of 6
                          Bellevue Hospital Center
                            Chart Review Print

Location         Patient Name
DIS-TM3 Bed3     Hickman,Donell        Patient Number  Visit Number  Age  Sex
                                       3760350         3760350-2     38Y  M

                                       Attending Physician           D.O.B.
                                       Gulati,Rajneesh                08/15/1978

Unscheduled ED RN Initial Assessment
Event Time: Tue, 27 Dec 16  2040                        Status: complete

Tue, 27 Dec 16  2242  Documented by Massin Feliz, RN

Vital Signs                : Vitals recently documented and reviewed
Pain Screen                : no change from last pain screen
ESI Level                  : 4
Chief Complaint            : missed optho clinic appointment ,
Triage Assessment          : awake, alert, dressing to R eye, here to
                             follow up with optho, missed optho
                             appointment today
Pre-Hospital Tx            : None
Focused Assessment         : Patient is a&ox3, breathing spnt
                             unlabored. no acute distress. here for
                             follow up due to right eye surgery.
                             unable to open right eye. appears
                             swollen as well.
(Clinic Past Med/Surg Hx)  : See hpi
Past Medical/Surgical Hx   : Depression
Medications on Arrival     : No Medications
Allergies - Medications    : no known drug allergies
Allergies - Other          : no known allergens
Med Allergy(ies) Documented/Revw'd?: (Yes) Allergies reviewed or documented
Domestic Violence          : Domestic Violence: no
Psych Risk Assessment      : None indicated at this time
ED Alerts                  : Prisoner (Other);
Height                     : 182.88 cm (72.00 in, 6'0.0")
Preferred Language         : English
Communication Ability      : Able to communicate
Language Used              : English
Suspected Sepsis           : no
Vision Status              : normal vision

8



DANIEL HICKMAN
# 77957-054
FEDERAL CORRECTIONAL INSTITUTION
HAZELTON
P.O. BOX 5000
BRUCETON MILLS, W.V. 26525

S
W

(LEGAL) MAIL



U.S. POSTAGE PAID
FCM LG ENV
BRUCETON MILLS, WV
26525
MAR 26, 21
AMOUNT

**$0.00**

R2305K136181-03

1000

11201

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
225 CADMAN PLAZA EAST, RM. 1185
BROOKLYN, N.Y. 11201-1818