UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DONELL HICKMAN,

                              Plaintiff,

    -against-

BELLEVUE HOSPITAL CENTER, RAJNEESH
GULATI, MD, MARK P. BERNSTEIN, MD,
JOHN DOE PHYSICIANS AT BELLEVUE,
NYC HEALTH & HOSPITALS CORPORATION,
and UNITED STATES OF AMERICA,

                            Defendants.
----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**21 CV 1738 (DG)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff Donell Hickman, proceeding *pro se*, brings this negligence action against the United States of America ("Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., and a medical malpractice claim under New York state law against defendants NYC Health & Hospitals Corporation ("HCC"), Bellevue Hospital Center, Rajneesh Gulati, MD, Mark P. Bernstein, MD (collectively, "the City Defendants") and John Doe Physicians at Bellevue. Plaintiff alleges that authorities at Metropolitan Detention Center, Brooklyn ("MDC Brooklyn") denied his requests to be moved to a lower bunk for his own safety while incarcerated at the jail and that, as a result, he fell from his upper bunk, sustaining an injury that ultimately left him totally blind in his right eye following surgery at Bellevue Hospital. The Government and the City Defendants move to dismiss plaintiff's amended complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.[1] The Honorable Diane Gujarati referred defendants' motions to me for a Report and Recommendation

---

[1] The Government gave plaintiff notice pursuant to Local Civil Rule 12.1 that the Court may treat its motion as one for summary judgment. ECF No. 71.

1

in accordance with 28 U.S.C. § 636(b). For the reasons stated in this Report, it is respectfully recommended that the Government's motion to dismiss, ECF No. 70, should be granted in part and denied in part, that the City Defendants' motion to dismiss, ECF No. 74, should be granted, and that plaintiff's claim against the John Doe Physicians at Bellevue should be dismissed.

## BACKGROUND

A. December 2016 Injury and Treatment

Between July 2016 and January 2017, plaintiff was detained at MDC Brooklyn, where he was assigned an upper bunk. Am. Compl. ¶¶ 13, 15. Throughout his detention, plaintiff weighed 270 pounds, resulting in "difficulty . . . getting up to and down from an upper bunk." Id. ¶ 15. Plaintiff "repeatedly requested a lower bunk bed" from MDC Brooklyn housing and medical staff—requests which were all denied. Id. ¶¶ 15-17.

On December 22, 2016, plaintiff fell from his upper bunk, causing him to lose consciousness and sustain injuries to his right eye and left shoulder. Id. ¶ 18. After plaintiff's cellmate found him unconscious, plaintiff was treated by medical staff at MDC Brooklyn, who sent him to NYU Langone Hospital ("NYU Langone"). Medical staff at NYU Langone placed plaintiff's dislocated "arm bone back into the socket"—the only treatment he received for his dislocated shoulder—and transferred him to Bellevue for treatment of his eye injury. Id. ¶¶ 20-21. At that time, plaintiff had blurry vision in his right eye and was informed by medical staff at Bellevue that while testing showed 20/20 vision, his eye injury required surgery. Id. ¶¶ 22-23. Defendants Gulati and Bernstein "both participated in the examination and treatment" of plaintiff at Bellevue, along with other medical staff plaintiff cannot identify. Id. ¶¶ 25-26.

On December 22, 2016, Bellevue physicians operated on plaintiff. Id. ¶ 24. Several days after surgery, "the patch that had been covering [p]laintiff's right eye was removed" and plaintiff

"first became aware that he no longer had vision" in that eye. Id. ¶ 27. On December 28, 2016, plaintiff was discharged from Bellevue and transported back to MDC Brooklyn, where his subsequent requests for further treatment for his eye and shoulder were denied. Id. ¶¶ 28-31. In January 2017, plaintiff was transferred to the United States Penitentiary Canaan ("Canaan"); he was moved in 2018 to Federal Correctional Institution Hazelton ("Hazelton"). Id. ¶¶ 32, 40. At Canaan and Hazelton, Bureau of Prisons ("BOP") medical staff examined his right eye "once or twice" without considering treatment that "might restore some vision" and, while at Hazelton, plaintiff "gave up any hope that he would ever receive treatment for his injured left shoulder." Id. ¶¶ 38-42. Plaintiff was released from federal prison in July 2022.[2] Id. ¶ 62. As of the date this action was filed, plaintiff continued to experience "discomfort and looseness" in his left shoulder and remains blind in his right eye. Id. ¶¶ 63-64.

B. Administrative Filings and SF-95

Throughout his detention by the BOP, plaintiff alleges he filed documents to pursue his claims related to his December 2016 fall and injuries. He claims the documents went unacknowledged. On November 20, 2018, plaintiff signed a Standard Form 95 ("SF-95") requesting $5 million in damages from the BOP for the injuries he sustained as a result of his December 2016 fall.[3] Id. ¶¶ 43-44; id. Ex. C, ECF No. 54 at 19-20 ("SF-95"). "Plaintiff gave the completed SF-95 to his counselor at Hazelton and believes that his counselor forwarded it to the

---

[2] According to BOP records, plaintiff was released into a halfway house in July 2022 and from BOP custody entirely on February 21, 2023. ECF No. 72 ("Alvarez Decl.") ¶ 7; ECF No. 72-1.

[3] Plaintiff also filed a series of administrative grievances prior to signing the SF-95 at the facilities where he was incarcerated. In January 2017, plaintiff filed an informal complaint known as a BP-8 with his counselor at Canaan, alleging that negligence by MDC Brooklyn staff caused his eye injury. Am. Compl. ¶¶ 33-34. Plaintiff believes his counselor "transmitted [the BP-8] . . . to the appropriate BOP employee or official." Id. ¶ 34. Sixty days later, having received no response, plaintiff submitted a second BP-8 to his counselor, which also went unacknowledged. Id. ¶ 35. In May 2017, plaintiff filed a Formal Administrative Remedy Request, known as a PB-9, with his counselor, who plaintiff believes signed the BP-9 and sent it to the warden. Id. ¶ 36. Plaintiff never received a response or acknowledgment to the BP-9. Id. ¶ 37.

BOP Northeast Regional Office." Id. ¶ 45. When plaintiff did not receive a response or acknowledgement of his SF-95, he sent a letter dated May 20, 2019 to the BOP Northeast Regional Office asking about the status of his claim. Id. ¶¶ 46-47. This letter, too, went unanswered. Id. On March 1, 2020, plaintiff again inquired about the status of his SF-95, sending a memo to Hazelton staff and copying the BOP Northeast Regional Office. Id. ¶ 48; id. Ex. D, ECF No. 54 at 22. A few days later, plaintiff's counselor instructed him to resubmit the SF-95, which plaintiff did on or around March 9, 2020 by certified mail to the BOP Northeast Regional Office. Id. ¶¶ 49-50; id. Ex. E, ECF No. 54 at 24. On September 16, 2020, plaintiff received a letter dated July 6, 2020 from the BOP regional counsel informing him that his claim was denied as untimely because plaintiff did not "present[ . . . it] in writing to the appropriate Federal agency" within two years of its accrual. Id. ¶ 51; id. Ex. F, ECF No. 54 at 26 ("Denial Letter"). Later in September 2020, plaintiff submitted a request for reconsideration of the Denial Letter, explaining that "he had submitted an SF-95 on November 20, 2018" and included "all his previous filings regarding the December 22, 2016 incident" as well as an affidavit attesting to their authenticity.[4] Id. ¶ 58. Again, plaintiff received no acknowledgement or response. Id. ¶ 59. On January 8, 2021, plaintiff sent a final letter to the BOP Northeast Regional Office inquiring about his November 2018 SF-95. Id. ¶ 60; id. Ex. G, ECF No. 54 at 28.

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 26, 2021.[5] ECF No. 1. With the Court's leave, plaintiff filed an amended complaint on March 2, 2023. ECF No. 54. Defendants thereafter proposed a briefing schedule for their motions to dismiss the amended complaint. ECF No. 58.

---

[4] "Plaintiff was unable to obtain a copy of the request for reconsideration because his facility was locked down due to the COVID-19 pandemic." Am. Compl. ¶ 55.

[5] "Under the prison mailbox rule, a *pro se* prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court." Sides v. Paolano, 782 F. App'x 49, 50 (2d Cir. 2019) (summary order) (citation omitted). Plaintiff mailed his complaint from prison on March 26, 2021. ECF No. 54 at 30.

4

However, despite defendants' timely service of their motions to dismiss on plaintiff, plaintiff did not serve his opposition to the motions by the deadline. The Court twice *sua sponte* extended plaintiff's deadline to serve or file his opposition to defendants' motions—most recently, to November 30, 2023. ECF Nos. 63, 67. At the Court's direction, defendants filed their motions to dismiss. ECF Nos. 70, 74. Plaintiff has not opposed the motions. Defendants' motions are therefore considered unopposed.

## DISCUSSION

Plaintiff's amended complaint alleges two claims under the FTCA against the United States arising from his December 2016 fall, one for negligence at MDC Brooklyn and the other for negligence at Canaan and Hazelton. Plaintiff's amended complaint also alleges a New York State law medical malpractice claim against the City Defendants for his treatment at Bellevue.

The Government argues that plaintiff's claim for negligence at MDC Brooklyn should be dismissed as barred by the FTCA's statute of limitations and that his claim regarding negligence at Canaan and Hazelton should be dismissed as unexhausted or, in the alternative, as untimely. The City Defendants move to dismiss plaintiff's state law medical malpractice claim for failure to state a claim, failure to file a notice of claim, and as barred by the statute of limitations.[6]

### I.   Standard of Review

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However,

---

[6] The City Defendants also argue that plaintiff's FTCA claims are untimely, but such claims are and can only be asserted against the United States. The City Defendants further seek dismissal because plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). ECF No. 74-2 at 11. However, the PLRA exhaustion requirement only applies to federal law claims. 42 U.S.C. § 1997e(a). As plaintiff asserts a state law claim against the City Defendants, PLRA exhaustion is inapposite. See Nunez v. Goord, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) ("As [the plaintiff's] cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement.").

5

"the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Herrera v. Comme des Garcons, Ltd., 84 F.4th 110, 113 (2d Cir. 2023) (internal quotation and citation omitted). In addition to the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference therein, or documents that the complaint "relies heavily upon" and are "integral" to the complaint, even if not incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243 (2d Cir. 2020) (citations omitted). "[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint." Haas v. Com. Bank, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (citation omitted).

The standard of review for a motion to dismiss under Rules 12(b)(1) and 12(b)(6) are substantively identical. Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). On a motion to dismiss under 12(b)(1), however, the party invoking the Court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)); McCray v. Lee,

6

No. 16-CV-1730, 2017 WL 2275024, at *2 (S.D.N.Y. May 23, 2017).[7] "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Makarova, 201 F.3d at 113.

## II.   FTCA Claims

"The law is clear that the United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued." Collins v. United States, 996 F.3d 102, 108–09 (2d Cir. 2021) (cleaned up). "The FTCA provides a limited waiver of the Government's sovereign immunity for claims 'for injury or loss of property, or personal injury or death caused by the negligen[t] or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" Wright v. United States, 162 F. Supp. 3d 118, 127 (E.D.N.Y. 2016) (quoting 28 U.S.C. § 1346(b)(1)). "But the waiver is subject to a jurisdictional prerequisite: a tort action 'shall not be instituted . . . against the United States for money damages . . . unless the claimant shall have first *presented* the claim to the appropriate Federal agency' for its review." Collins, 996 F.3d at 109 (quoting 28 U.S.C. § 2675(a)) (emphasis in original).

Specifically, the FTCA provides:

> An action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). To satisfy the presentment requirement, a plaintiff "must provide a reviewing agency with sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably

---

[7] The Clerk of Court is respectfully directed to send plaintiff the attached copies of all the unreported cases cited herein.

understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement." Collins, 996 F.3d at 119. The plaintiff must show "actual receipt" of this notice of claim—proof of "mere mailing" does not suffice to demonstrate presentment. Cooke v. United States, 918 F.3d 77, 82 (2d Cir. 2019).

It is the plaintiff who "bears the burden of showing that she exhausted her administrative remedies by presenting her claim to the appropriate federal agency before filing suit." Id. at 80 (citations omitted). "For federal inmates, that means filing a claim for money damages with the Bureau of Prisons. . . ." Barnhill v. Terrell, 616 F. App'x 23, 24 (2d Cir. 2015) (summary order) (citing 28 C.F.R. § 543.32). After filing, the plaintiff must wait to bring suit until her claims are "finally denied in writing by the agency, or at least six months have elapsed since the filing of the claim without any agency action." Cuello v. Lindsay, No. 09-CV-4525, 2011 WL 1134711, at *10 (E.D.N.Y. Mar. 25, 2011) (citing 28 U.S.C. § 2675(a)). The presentment requirement "is jurisdictional and cannot be waived." Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (citations omitted).

The FTCA separately requires that the plaintiff present her claim and then pursue it in federal court within certain time limits. Pursuant to 28 U.S.C. § 2401(b), "a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." United States v. Wong, 575 U.S. 402, 405 (2015) (quoting 28 U.S.C. § 2401(b)). Though interrelated, the FTCA's presentment requirement and the FTCA's time limits are distinct. Unlike the presentment requirement, "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." Id. at 420; see also Am. United Transportation Inc. v. W. Reg'l Union, 569 F. Supp. 3d 151, 157 (E.D.N.Y. 2021) ("Unlike the FTCA's exhaustion

8

of administrative remedies, which is jurisdictional in nature and not subject to waiver or tolling, the statute of limitations for a plaintiff to file a civil suit and commence an action is subject to waiver and tolling."). While a plaintiff's failure to present her claim operates as a jurisdictional bar that warrants dismissal even if equity calls out for consideration, the text of § 2401(b) "speaks only to a claim's timeliness, not to a court's power" and does not necessitate such "harsh consequences. . . ." Wong, 375 U.S. at 409-10. Thus, there is a significant difference between *whether* a claim is presented and *when* it is presented under the FTCA.

### A. Negligence at MDC Brooklyn

The Government argues that plaintiff's tort claim related to his fall and medical care while an inmate at MDC Brooklyn is untimely under § 2401(b) for two independent reasons. First, it argues that plaintiff's SF-95 was not received by the BOP regional office within the FTCA's two-year statute of limitations. ECF No. 73 ("Govt. Mem.") at 9-10. Second, it argues that plaintiff failed to commence this action within six months of the BOP's denial of his SF-95 claim. Id. Before addressing these arguments, it is important to note what the Government does not argue: that plaintiff failed to present this claim. Indeed, there is no dispute that the BOP regional office received plaintiff's SF-95 and that it was sufficiently detailed to put the agency on notice of the injuries related to his incarceration at MDC Brooklyn. Rather, the Government's motion to dismiss plaintiff's claim relies on *when* plaintiff filed his administrative claim and *when* he filed this action in federal court. Thus, there is no jurisdictional bar to plaintiff's MDC Brooklyn claim under the FTCA and, for the reasons stated below, the Court finds that plaintiff's claim is timely.[8]

---

[8] As the "FTCA's statute of limitations should be treated as an affirmative defense," the Government's motion to dismiss plaintiff's negligence claim for treatment at MDC Brooklyn as untimely is evaluated as a motion to dismiss under Rule 12(b)(6). Rosse v. United States, 110 F. Supp. 3d 415, 425 (N.D.N.Y. 2015) (citations omitted). While the Court is authorized to convert the Government's motion to dismiss into one for summary judgment, the Court declines to exercise its "complete discretion" to do so in this case. Stephens v. Bayview Nursing & Rehab. Ctr., No. 07–CV–596, 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (quoting Carione v. United States, 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005)). Although provided with a Rule 12.1 Notice, plaintiff, who is proceeding *pro se*, had no opportunity

9

i.      Filing the SF-95

As discussed, the FTCA requires a plaintiff to present her tort claim to the appropriate federal agency, here the BOP, within two years of its accrual. 28 U.S.C. § 2401(b). "A claim under the Federal Tort Claims Act accrues on the date that a plaintiff discovers that he has been injured." Valdez ex rel. Donely v. United States, 518 F.3d 173, 177 (2d Cir. 2008). The earliest plaintiff's claim against the United States could have accrued was on the date of his fall and injuries: December 22, 2016. Plaintiff was therefore required to present his administrative claim to the BOP by December 22, 2018. Plaintiff signed his SF-95 on November 20, 2018 and gave it to his counselor at Hazelton that same day for delivery to the appropriate agency. See Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) ("[I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (collecting cases). The Government argues that the claim is untimely because the SF-95 was not *received* by the BOP regional office until March 2020, well outside the FTCA's two-year statute of limitations.

The question, then, is whether the FTCA's clock stopped ticking on the date plaintiff handed his SF-95 to his counselor or on the date it was received by the BOP regional office. In arguing receipt controls, the Government does not address that plaintiff was a *pro se* incarcerated inmate at the time he filed his administrative claim.[9] Under the well-established prison mailbox

---

to conduct discovery on the Government's statute of limitations defense and the record is insufficiently developed. Shapiro v. Cmty. First Servs., Inc., No. 11-CV-4061, 2013 WL 1122628, at *6 (E.D.N.Y. Mar. 18, 2013); see also Kennedy v. United States, 643 F. Supp. 1072, 1081 (E.D.N.Y. 1986) (denying the government's request to treat a motion to dismiss as one for summary judgment because "[a]lmost no discovery appears to have been undertaken, further facts relevant to the question could undoubtedly be presented to the Court, and the parties have not briefed the issue as fully as they might wish to on a full-fledged summary judgment motion").

[9] None of the cases relied on by the Government for the proposition that date of receipt by the appropriate agency determines a claim's timeliness involve a *pro se* incarcerated plaintiff. Elsewhere in its motion, the Government cites FTCA cases brought by incarcerated plaintiffs, but none address the prison mailbox rule or involve facts that would make the date of mailing dispositive. See, e.g., Abdoulaye v. Cimaglia, No. 15-CV-4921, 2018 WL 1890488, at *3 (S.D.N.Y. Mar. 30, 2018) (plaintiff did not dispute that he presented his claims outside the two-year statute of limitations); Michel v. United States, No. 17-CV-1893, 2019 WL 4602828, at *4 (E.D.N.Y. Sept. 23, 2019)

10

rule, certain legal documents submitted by *pro se* prisoners are deemed filed on the date plaintiff delivers them to prison officials to be transmitted to the court, not on the date they are received. Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (citing Houston v. Lack, 487 U.S. 266, 270 (1988)). This is because, unlike other litigants, "the *pro se* prisoner has no choice but to entrust the forwarding" of legal documents "to prison authorities whom he cannot control or supervise and who may have every incentive to delay." Houston, 487 U.S. at 271. In Tapia-Ortiz v. Doe, the Second Circuit held that the prison mailbox rule "applies to an FTCA administrative filing." 171 F.3d 150, 152 (2d Cir. 1999).

Applying the prison mailbox rule here, the Court finds that plaintiff presented his claim to the appropriate agency on November 20, 2018, when he delivered his SF-95 to his counselor for transmission to the BOP regional office.[10] While an incarcerated person who delivers documents to someone outside the prison system for mailing cannot benefit from the prison mailbox rule, Knickerbocker v. Artuz, 271 F.3d 35, 37 (2d Cir. 2001), plaintiff's prison counselor constitutes a prison authority. See United States v. Resnick, 451 F. Supp. 3d 262, 269 (S.D.N.Y. 2020) (applying the prison mailbox rule to documents provided to a prison counselor); Colon v. Ercole, No. 09-CV-746, 2009 WL 2633657, at *2 (S.D.N.Y. 2009) (finding petitioner who submitted documents to "inmate law clerk" can benefit from the prison mailbox rule). Plaintiff alleges he gave his SF-95 to his prison counselor to send to the appropriate agency. Am. Compl. ¶ 45. This allegation is supported by plaintiff's messages referencing and requesting acknowledgment of the SF-95. See id. Ex D.

---

(incarcerated plaintiff presented an SF-95 to prison authorities for mailing well outside the two-year statute of limitations); Mayes v. United States, 790 F. App'x 338, 340 (2d Cir. 2020) (summary order) (affirming district court's denial of leave to file an amended complaint adding FTCA claim that was unexhausted).

[10] The Government's argument that plaintiff cannot rely on the date of mailing to establish the timeliness of his claim because "he does not provide any proof" that his claim was mailed misses the mark. Govt. Mem. at 11. Under the prison mailbox rule, plaintiff must only allege that he "turn[ed] his complaint over to prison officials within the statute of limitations period." Dory, 999 F.2d at 682.

It is true that the SF-95 received by the BOP regional office in March 2020 was not plaintiff's original but an identical copy resubmitted at his BOP counselor's direction.[11] Id. ¶ 49. This does not deprive plaintiff of the benefit of the prison mailbox rule. See Joseph v. Conway, No. 07-CV-5223, 2021 WL 3424730, at *3 (E.D.N.Y. Aug. 4, 2021) (holding that, under the prison mailbox rule, documents were filed on the date they were delivered for mailing notwithstanding that they were never received where petitioner subsequently resubmitted "virtually identical" copies). To the contrary, the prison mailbox rule exists because plaintiff, as an incarcerated person, could not personally deliver the SF-95 himself but rather had to entrust this task to prison authorities and rely on them to monitor the form's progress.[12] And as noted, there is no dispute that plaintiff's SF-95 satisfies the presentment requirement. The BOP's denial of plaintiff's claim as untimely under § 2401(b) should not be credited under these circumstances.

      ii.  Filing in Federal Court

The Government also argues that plaintiff's claim is untimely because he waited more than six months to bring suit in federal court after he was "informed" of the BOP's denial on July 6, 2020, the date printed on the Denial Letter. Govt. Mem. at 12. Plaintiff did not commence this action until March 26, 2021, more than eight months later. ECF No. 1. But the FTCA's six-month clock begins ticking on "the date of mailing, by certified or registered mail" of the notice denying

---

[11] Throughout its memorandum, the Government references plaintiff's "2020 SF-95." There is no such document. The only SF-95 in this case was signed by plaintiff in November 2018. The Court does not countenance the Government's suggestion that, because plaintiff listed his address on the SF-95 as the facility where he was incarcerated until September 2018, plaintiff backdated the document and lied about providing it to his prison counselor. See Govt. Mem. at 4 n.2. Drawing this weighty inference against plaintiff on so thin a reed would be an error here.

[12] Four U.S. Senators recently called on the Department of Justice ("DOJ") and BOP to investigate whistleblower reports of serious misconduct at Federal Correctional Complex Hazelton, including "[s]taff shredding personal inmate mail and failing to provide inmates access to their mail." Press Release, Durbin, Grassley, Manchin, Capito Call On DOJ & BOP To Investigate Reports Of Abusive Treatment At FCC Hazelton (2023), https://www.durbin.senate.gov/download/9-12-23-rjd-and-ceg-to-doj_bop-on-fcc-hazelton. While there is no indication such conduct played a direct role in this case, the call for BOP and DOJ investigation of this issue speaks to the enduring necessity of the prison mailbox rule.

the claim, not on the date found on the notice.[13] 28 U.S.C. § 2401(b) (emphasis added). Plaintiff alleges that the Denial Letter was <u>not</u> sent by registered or certified mail, an allegation which the Court must take as true. Am. Compl. ¶ 54. Even if the Court were to look outside the amended complaint to determine the method of mailing, the Government attaches no evidence to its motion demonstrating that it mailed the Denial Letter to plaintiff at all, let alone by certified or registered mail. That plaintiff received the Denial Letter does not say how the Government communicated the denial to plaintiff or determine when the FTCA's six-month clock began to run.

The Second Circuit has not squarely addressed how an agency's failure to send its denial notice by registered or certified mail impacts the Government's ability to raise a statute of limitations defense.[14] The Ninth, Fifth, and Seventh Circuits have "indicated that the government cannot invoke the FTCA statute of limitations if it has failed to comply with the certified or registered mailing requirement—even if a claimant actually received the notice of denial." <u>Adams v. United States</u>, 658 F.3d 928, 933 (9th Cir. 2011) (citing <u>Raddatz v. United States</u>, 750 F.2d 791, 797 (9th Cir. 1984); <u>Flory v. United States</u>, 138 F.3d 157, 160 (5th Cir. 1998); <u>Miller v. United States</u>, 741 F.2d 148, 150 (7th Cir. 1984)). In this district, the Court evaluated whether an agency's response to a plaintiff's claim was sent via registered or certified mail to determine whether the notice constituted a "final denial" under the FTCA. <u>Glorioso v. F.B.I.</u>, 901 F. Supp. 2d 359, 362 (E.D.N.Y. 2012) (holding that an agency's response to an administrative claim "meets the criteria"

---

[13] The date of mailing and the date printed on a denial letter are not necessarily the same. See <u>Hunt v. United States</u>, No. 07-CV-0112, 2007 WL 2406912, at *2 (N.D.N.Y. Aug. 21, 2007) (finding that the plaintiff's six-month window to commence her FTCA lawsuit began with mailing of denial letter, which was two days after the letter was dated).

[14] In <u>Sanon v. Department of Higher Education</u>, a brief summary order, the Second Circuit affirmed dismissal of plaintiff's FTCA claim on a motion for summary judgment because plaintiff filed suit outside the FTCA's six-month limitations period. 453 F. App'x 28, 30 (2d Cir. 2011), as amended (Nov. 8, 2011) (summary order). The Court observed that the denial notice was dated March 15, 2004 and that the case was not filed until September 13, 2006 but did not address the question of whether the notice was sent by registered or certified mail, an issue which apparently was not disputed at summary judgment. The holding cited to <u>Willis v. United States</u>, in which the Second Circuit noted explicitly that the denial notice was sent by the agency to the "attorney for the claimants by certified mail" in accordance with the FTCA. 719 F.2d 608, 609 (2d Cir. 1983).

of a final denial, including that it was "in writing and sent by certified mail"). This has ramifications on the timeliness of an action: if a claim is not "finally denied" within six months, the claimant may, at their option, deem the claim denied and bring suit at any time thereafter. See 28 U.S.C. § 2675(a) (providing that the "failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim").

The text of the FTCA supports this Court's conclusion that the Government is required to send its notice by certified or registered mail. First, critical provisions of the FTCA setting forth the statute of limitations and exhaustion requirement both unambiguously mandate mailing by certified or registered mail. 28 U.S.C. § 2401(b) (statute of limitations); 28 U.S.C. § 2675(a) (exhaustion requires final denial "in writing and sent by certified or registered mail"). This is carried through to the FTCA's regulations. 28 C.F.R. § 14.9(a) ("Final denial of an administrative claim shall be in writing and sent to the claimant . . . by certified or registered mail."). The Government offers no basis to find that it fulfilled this requirement, nor any reason to read this language out of the statute.

Second, the FTCA's six-month time limit on filing runs from the date the denial notice is properly mailed—actual receipt is irrelevant. See Mortillaro v. United States, No. 21-CV-852, 2023 WL 2734827, at *1 (E.D.N.Y. Mar. 31, 2023) (denying the Government's motion to dismiss and for summary judgment arguing that FTCA complaint was time barred because the Government failed to provide admissible evidence that the denial letter was mailed on a specific date); Mohammad v. VA Rooming House, No. 07-CV-3796, 2008 WL 428011, at *4 (E.D.N.Y. Feb. 15, 2008) ("This six-month limitations period begins to run when the final denial notices are properly mailed, regardless of whether they are received" (citation omitted)). Even an otherwise meritorious

claim is presumptively barred if filed six months and one day after the date of mailing of the denial notice—an undeniably harsh result. The method of mailing therefore serves a critical purpose as proof of registered or certified mailing allows the all-important date of mailing to be established with certainty. Equity also counsels that the Government "cannot invoke the benefit of the statute of limitations to shield itself" where it first failed to strictly comply with the FTCA's claim processing requirements. Adams, 658 F.3d at 934.

In short, the Government argues that plaintiff's claim must be dismissed for his failure to follow § 2401(b) to the letter, but the Government did not live up to its statutory obligation under the FTCA when it failed to send the denial of plaintiff's claim to him by certified or registered mail. The Government's motion to dismiss plaintiff's FTCA negligence claim regarding events at MDC Brooklyn as untimely should therefore be denied.[15]

---

[15] Even if the Government sent the Denial Notice by registered or certified mail, the Court would find on this record that plaintiff's September 2020 request for reconsideration would allow him to maintain a timely FTCA claim. The Government's motion ignores plaintiff's request for reconsideration, even though plaintiff raised it in his amended complaint. Pursuant to FTCA regulations, "[u]pon the timely filing of a request for reconsideration the agency shall have 6 months from the date of filing in which to make a final disposition of the claim and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of a request for reconsideration." 28 C.F.R. § 14.9(b). Put another way, if an agency does not act on a request for reconsideration within six months, "the claimant may, at his option, deem the request to have been denied . . . and may then commence an action in district court." Glover v. United States, 111 F. Supp. 2d 190, 193 (E.D.N.Y. 2000). This regulation, which was promulgated pursuant to the settlement authority vested in the Attorney General under 28 U.S.C. § 2672, is not jurisdictional and does not work to prevent a plaintiff from suing after receiving a final denial. State Farm Mut. Auto. Ins. Co. v. United States, 326 F. Supp. 2d 407, 416 (E.D.N.Y. 2004) ("[T]he court holds that the plaintiff's failure to comply with 28 C.F.R. § 14.9 does not deprive this court of jurisdiction to hear the plaintiff's claims."); see also Collins, 996 F.3d at 116 (holding that failure to comply with FTCA regulatory requirement "promulgated to facilitate an agency's exercise of the settlement authority conferred by 28 U.S.C. § 2672" does not deprive the court of subject matter jurisdiction).

Here, plaintiff mailed a request for reconsideration in September 2020, the same month he received the Denial Letter. Am. Compl. ¶ 55. Drawing all reasonable inferences in plaintiff's favor, the BOP received his reconsideration request within six months of the July 6, 2020 Denial Letter but took no action—meaning that plaintiff can deem the claim denied. True, BOP Legal Assistant Briggette Alvarez avers that other than the SF-95, the BOP "never received any other administrative tort claim from Mr. Hickman . . . regarding concerning [sic]" the December 2016 fall or any other incidents. Alvarez Decl. ¶ 12. But even if the Court were to consider materials outside the amended complaint, the Alvarez declaration hardly demonstrates that the BOP never received a request for reconsideration from plaintiff, only that the agency did not deem such a request an "administrative tort claim." That the BOP may be in possession of additional documents related to plaintiff's claim is supported by the fact that the Alvarez declaration makes no mention of the January 8, 2021 letter plaintiff sent to the BOP regional office, which plaintiff annexes to his amended complaint along with a certified mail receipt. Am. Compl. Ex. G.

15

B. Negligence at Canaan and Hazelton

The Government argues plaintiff's discrete claim under the FTCA for lack of medical treatment at Canaan and Hazelton should be dismissed for lack of presentment. The Court agrees. "[P]laintiff—even if *pro se*—must exhaust his administrative remedies before bringing a claim under the FTCA." Barnhill, 616 F. App'x at 24 (citing Adeleke v. United States, 355 F.3d 144, 153 (2d Cir. 2004)). Failure to do so "deprives Article III courts of subject matter jurisdiction over FTCA claims." Leytman v. United States, 832 F. App'x 720, 722 (2d Cir. 2020) (summary order).

While plaintiff's SF-95 alleges that the BOP failed to provide "follow-up care," it does not mention Hazelton or Canaan and instead focuses on the MDC Brooklyn staff's refusal to move him to a lower bunk prior to his December 2016 fall. Plaintiff's SF-95 therefore lacks sufficiently specific information to put the BOP on notice of a claim related to his medical treatment at Canaan and Hazelton. See Collins, 996 F.3d at 119. Therefore, the Government's motion to dismiss for lack of subject matter jurisdiction should be granted and plaintiff's FTCA claim for negligence at Canaan and Hazelton should be dismissed without prejudice. Leytman, 832 F. App'x at 722 (holding failure to exhaust FTCA claims deprives court of subject matter jurisdiction, and accordingly the dismissal must be without prejudice).

**III. Medical Malpractice Claim**

The City Defendants' motion to dismiss plaintiff's medical malpractice claim should be granted as plaintiff failed to file a notice of claim or to commence this action within one year and ninety days of the claim accruing.[16]

---

Further, the Court notes that if the BOP mailed the Denial Letter on July 8, 2020—just two days after it is dated—then plaintiff's January 8, 2021 letter may itself operate as a timely request for reconsideration filed within six months under the prison mailbox rule. See Hunt, 2007 WL 2406912, at *2 (noting agency denial letter was mailed two days after it was dated). This observation further underscores the importance of the Government's obligation to hew to the methods of mailing in the FTCA.

[16] The Court need not reach the City Defendants' remaining arguments.

16

"Under New York law, to bring tort claims against a municipality and its employees, the plaintiff must provide notice of the claim with the particular entity within 90 days after it arises." Griffin v. Jacobi Med. Ctr., No. 21-CV-08247, 2023 WL 6198801, at *7 (S.D.N.Y. Sept. 21, 2023) (citing N.Y. Gen. Mun. Law §§ 50–e, 50–i(1), 50–k(6); N.Y. Unconsol. Laws § 7401(2)). "[A] notice of claim is a condition precedent to bringing personal injury actions against municipal corporations such as the HHC" and failure to comply warrants dismissal. Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).

Further, a claim for medical malpractice against HHC "shall not be commenced more than one year and ninety days after the cause of action thereof shall have accrued." N.Y. Unconsol. Laws § 7401(2). "The same time limitation applies to claims against employees of New York City agencies and of HHC." Tavares v. New York City Health & Hosps. Corp., No. 13-CV-3148, 2015 WL 158863, at *9 (S.D.N.Y. Jan. 13, 2015) (citing N.Y. Gen. Mun. Law § 50–k(6); N.Y. Unconsol. Laws § 7401(6)); accord Dawkins v. Copeland, No. 17-CV-9926, 2019 WL 1437049, at *9 (S.D.N.Y. Mar. 31, 2019) ("Claims for negligence and malpractice against the New York City Health and Hospitals Corporation and its employees must be brought within one year and ninety days."). "In New York, a medical malpractice claim accrues on the date when the alleged negligent act occurred." Tavares, 2015 WL 158863, at *9 (citing N.Y. C.P.L.R. § 214–a).

Here, the latest date plaintiff's medical malpractice claim could have accrued was December 28, 2016, the date plaintiff was discharged by defendant Bellevue. Am. Compl. ¶ 28. Plaintiff therefore was required to file a notice of claim by March 28, 2017 and required to commence this action by March 28, 2018. Plaintiff did neither. Plaintiff filed this action on March 26, 2021, roughly three years after the statute of limitations had run, and plaintiff does not allege

17

that he filed a notice of claim. Plaintiff fails to show that "circumstances prevented him from timely filing his complaint." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

Plaintiff's medical malpractice claim against the City Defendants should therefore be dismissed. See Tavares, 2015 WL 158863, at *9 (dismissing medical malpractice claim against HHC and Bellevue doctors arising from treatment at the hospital as untimely because plaintiff filed his federal case more than two years after being discharged); Griffin, 2023 WL 6198801, at *8 (dismissing state tort claims with prejudice because plaintiff failed "to properly notify HHC of his claims and to file them within the statute of limitations"); Gomez-Kadawid v. Lee, No. 20-CV-1786, 2023 WL 5020317, at *4 (S.D.N.Y. June 13, 2023) (dismissing battery and medical malpractice claims stemming from surgery by Bellevue doctors as time-barred), report and recommendation adopted, 2023 WL 4681719 (S.D.N.Y. July 21, 2023).

Plaintiff's malpractice claim against the John Doe Physicians at Bellevue who "participated in the treatment of [p]laintiff's injuries" should similarly be dismissed. Am. Compl. ¶ 26. Plaintiff's claim against these unidentified defendants stems from the same course of treatment at Bellevue as his claim against the City Defendants and is therefore untimely for the reasons stated above. See E.A. Sween Co., Inc. v. A & M Deli Express Inc., 787 F. App'x 780, 782 (2d Cir. 2019) (summary order) (affirming *sua sponte* dismissal of complaint where Report & Recommendation informed plaintiff of opportunity to object).

## CONCLUSION

The Government's motion to dismiss plaintiff's amended complaint should be granted in part and denied in part. The Government's motion to dismiss plaintiff's FTCA claim regarding events at MDC Brooklyn should be denied. The Government's motion to dismiss plaintiff's claim for negligence at Canaan and Hazelton should be granted for lack of subject matter jurisdiction,

but the claim should be dismissed without prejudice.[17] The City Defendants' motion to dismiss plaintiff's medical malpractice claim under New York law should be granted. Plaintiff's claim against the John Doe Physicians at Bellevue should likewise be dismissed.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: January 5, 2024
    Brooklyn, New York

---

[17] The Government asks for plaintiff's claims to be dismissed with prejudice. ECF No. 70 at 1.